SHARP v PREFERRED RISK MUTUAL INSURANCE COMPANY

Docket No. 79575. Submitted March 5, 1985, at Lansing.—Decided May 7, 1985. Leave to appeal applied for.

Scott Sharp was involved in an automobile accident and received injuries which have resulted in his need for constant care. His mother, Lily Sharp, plaintiff herein, has provided much of that care and handles all arrangements for nursing care, including hiring and paying the nurses. Defendant, Preferred Risk Mutual Insurance Company, was the no-fault insurer and has not contested its liability for payment of benefits. It paid all of Scott's hospital and nursing expenses while he was hospitalized and for modifications to plaintiff's home so that Scott could be cared for and rehabilitated at home. Defendant refused to pay claims for rentals of two apartments to which plaintiff moved Scott after he left the hospital and prior to moving him to her home and for nursing services performed by the plaintiff. Plaintiff, for herself and as guardian and conservator of the estate of Scott Sharp, brought this action in Genesee Circuit Court to recover the benefits which defendant had declined to pay. The court, Philip C. Elliott, J., held that defendant was entitled to a setoff of $9,400 for social security benefits received by Scott for three years following the accident but not to any setoff after three years, that defendant had waived its defense based on the statute of limitations, that plaintiff was entitled to recover rental expenses and to $5,000 for nurse's aide and replacement services, that plaintiff may charge specified rates for nursing services of the nurses she hires, and that plaintiff was not entitled to penalty interest. Defendant appealed and plaintiff cross-appealed. *Held:*

1. The social security benefits were not deductible under the

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 7 Am Jur 2d, Automobile Insurance § 368.

Validity and construction of no-fault insurance plans providing for reduction of benefits otherwise payable by amounts receivable from independent collateral sources. 10 ALR4th 996.

[3] 7 Am Jur 2d, Automobile Insurance §§ 357-366.

[4] 7 Am Jur 2d, Automobile Insurance §§ 344, 369, 374.

Automobile insurer's liability for statutory excess interest for delayed payment of no-fault claim. 14 ALR4th 761.

insurance contract as amounts paid for "allowable expenses" under another benefit plan. Furthermore, the benefits in this case served the purpose of income replacement and Scott did not receive any insurance payments for work loss. Therefore, the defendant was not entitled to any setoff for social security benefits. The court's holding is not reversed, however, because plaintiff did not cross-appeal on this issue and the error was in the appellant's favor. The court's ruling was correct to the extent that it disallowed the setoff after three years.

2. Defendant waived the defense of the statute of limitations in regard to plaintiff's claim for providing nursing care.

3. Apartment rental may be an "allowable expense" under the no-fault act. In this case larger and better equipped housing was required for the injured person than would have been required had he not been injured, and the full cost is an allowable expense. Further, the move to the apartment reduced the cost of Scott's care significantly. The trial court's ruling on this issue is reversed and the plaintiff is awarded the full rental cost of the apartments.

4. The trial court properly awarded plaintiff payment for nursing services. The amount awarded, however, is not consistent with the facts. Therefore, this issue is remanded to the trial court for either a judgment consistent with the facts or further findings of fact consistent with the judgment.

5. The trial court properly denied an award of penalty interest except on the rental claim, any part of which the defendant had refused to pay. Penalty interest is therefore awarded on the rental portion of plaintiff's claim.

Affirmed in part, reversed in part, and remanded.

1. INSURANCE — NO-FAULT INSURANCE — SOCIAL SECURITY BENEFITS — WORK LOSS BENEFITS.

Social security disability benefits paid to an injured motorist as a result of the injury are paid as income replacement and have the same income replacement effect as do work loss benefits provided by the no-fault act.

2. INSURANCE — NO-FAULT INSURANCE — GOVERNMENTAL BENEFITS.

State or federal benefits provided or required to be provided must be deducted from no-fault automobile insurance benefits if they (1) serve the same purpose as the no-fault benefits, and (2) are provided or are required to be provided as a result of the same accident.

3. INSURANCE — NO-FAULT INSURANCE — ALLOWABLE EXPENSES — HOUSING.

The rental cost of appropriate housing is an "allowable expense"

under the no-fault act where larger and better equipped housing is required for the injured person than would be required if he were not injured (MCL 500.3107[a]; MSA 24.13107[a]).

4. INSURANCE — NO-FAULT INSURANCE — OVERDUE BENEFITS — APPEAL.

Penalty interest is awardable on a claim for no-fault insurance benefits only if the benefits are not paid within 30 days of submission of reasonable proof of the fact and of the amount of loss sustained; a trial court's findings of fact regarding reasonable proof of a claim will not be reversed unless they are clearly erroneous (MCL 500.3142; MSA 24.13142; GCR 1963, 517.1).

*Dean, Dean, Segar, Hart & Shulman, P.C.* (by *Leonard B. Shulman*), for plaintiff.

*Eugene S. Hoiby,* for defendant.

Before: ALLEN, P.J., and GRIBBS and T. GILLESPIE,* JJ.

ALLEN, P.J. In this action to enforce a no-fault automobile insurance contract, defendant appeals as of right from a July 16, 1984, judgment awarding plaintiff reimbursement for nursing services, rental expenses, and replacement services performed by plaintiff in connection with injuries sustained by her son. Plaintiff cross-appeals from the failure to order reimbursement of the full amount of rental expenses and contests the amounts awarded for nursing and replacement services. Defendant does not contest liability, the only issue being the amounts due plaintiff as "allowable expenses" under MCL 500.3107(a); MSA 24.13107(a). Whether apartment rental falls within this provision is an issue of first impression.

On October 27, 1979, 20-year-old Scott Sharp was involved in a single-car automobile accident. He was immediately taken to McPherson Hospital

* Circuit judge, sitting on the Court of Appeals by assignment.

in Howell, Michigan. After approximately eight hours, when he had stabilized, he was taken to St. Joseph's Hospital in Ann Arbor. Scott suffered no broken bones or internal injuries other than a gross closed head injury which resulted in a coma. Thomas Szymke, M.D., a specialist in physical medicine and rehabilitation, described Scott's injuries as severe damage to the motor cortex of the brain. Duane E. Powers, D.O., an osteopathic physician, described the injuries as a spastic paralysis due to brain damage.

Scott remained at St. Joseph Hosptial until January 2, 1980, when he was transferred to McLaren Hospital in Flint, where he was confined until May, 1980, when he was transferred to Kith-Haven, an extended care facility in Flint. While Scott was at McLaren Hospital, plaintiff spent 12 to 14 hours a day with him and learned to monitor intravenous tubes for infiltration and gastric feeding tubes for rate of flow and continued to assist in Scott's care by doing percussion on his lungs, rubbing his back and assisting the nurses in turning him in bed. As a precondition for Scott's being admitted to Kith-Haven, plaintiff had to provide 24-hour nursing care. Therefore, plaintiff hired Kelly Health Care, a temporary employment service providing nurses and nurse's aides. Plaintiff spent five to six hours per day with Scott.

On July 11, 1980, Scott was transferred to Flint Osteopathic Hospital where surgery was performed to correct problems with his gastric feeding tube where, except for a six-week period at Mayo Clinic, he remained until early November, 1980, when he was moved to an apartment which plaintiff had rented in Flint. Dr. Laronas of Flint Osteopathic Hospital wanted Scott returned to Kith-Haven, but plaintiff thought it would be bet-

ter for her son and less expensive to try home care.

At the apartment 24-hour nursing care was required and was provided by Kelly Health nurses. In August 1981, plaintiff moved Scott into a larger apartment that was wheelchair-accessible. At the second apartment she had a whirlpool installed for therapy. A Hoyer Lift was installed to move Scott to the whirlpool and to a La-Z-Boy chair. In February 1982, the plaintiff began employing nurses from Medical Personnel Pool. While Scott was living at the second apartment, the plaintiff also had an $88,000 addition built on the home she and her husband owned. She hired designers and builders of handicapper-accessible buildings to design a self-contained home environment, complete with kitchen and bathroom facilities. She sought to make it private, yet accessible to the rest of the house so that she could supervise the nurses. Scott lived at the second apartment until August or September 1983, when he moved into the new addition.

In October 1983, the plaintiff replaced the Medical Personnel Pool nurses with Samaritan nurses. In November 1983, she decided that the nursing companies were "too much of a hassle", and began to hire her own nurses and phase out the Samaritan nurses. By December she was solely responsible for hiring and paying Scott's nurses. She testified that she handled all of the insurance claims sent to the defendant, Preferred Risk Mutual Insurance Company, including the nursing bills. From this she knew that Medical Personnel Pool charged the insurance company $13.50, $11.50 and $7.00 per hour, plus mileage and time and a half for overtime, for registered nurses (RNs), licensed practical nurses (LPNs), and nurse's aides, respectively.

Medical Personnel Pool only paid their nurses $7.00 to $8.00 an hour for RNs, $6.00 to $6.75 for LPNs, and $4.00 for nurse's aides. The plaintiff charged the insurance company $13.00 per hour for RNs, $11.00 per hour for LPNs, and $7.00 per hour for nurse's aides. She paid RNs $9.00 per hour, LPNs $8.00 to $9.00 per hour, and nurse's aides $4.00 per hour.

Mrs. Sharp testified that she performs numerous services for Scott. She cleans his apartment, picks up his medications and equipment, does his banking, grocery shopping and personal shopping, and fills out insurance forms. She coordinated a National Academy for Child Development program, involving 70 volunteers who worked with Scott. Mrs. Sharp also testified concerning times when she had to work nurse's shifts because the nursing companies failed to provide a nurse. After much persuasion from the trial court, counsel for the defendant and the plaintiff were able to stipulate how often she substituted for nurses.

Defendant paid all of the hospital and nursing expenses incurred while Scott was at the several named hospitals and paid Kith-Haven and Kelly Health Care for their services. Likewise, defendant paid in full for the addition built on plaintiff and her husband's home. However, defendant declined to pay any rental incurred when plaintiff rented the two apartments and further declined to pay plaintiff for the nursing services performed by her when she assisted the hospital, Kelly Health Care, and home care services. It was for the services and costs for which defendant declined to pay that plaintiff filed suit. At trial defendant contended that plaintiff's claim for reimbursement for nursing services was barred by the statute of limitations and that defendant was entitled to a setoff of $9,400 for social security benefits for which Scott

became eligible and received during the first three years of his disability. Following a bench trial in July, 1984, the trial court entered judgment in relevant part as follows:

(1) Defendant is entitled to a setoff or credit of $9,400 for social security benefits received by Scott during the first three years following his injury; defendant is allowed no credit or setoff thereafter.

(2) Defendant waived its defense of the statute of limitations, since the court finds that the defense was not raised at trial.

(3) Plaintiff is entitled to recover $8,541 rental expenses.

(4) Plaintiff is entitled to $5,000 in nurses' aide and replacement services and is qualified and capable of providing, administering and supervising nursing care; to the extent that she provides such services she may charge the insurer $13 per hour for RNs, $11 per hour for LPNs, and $4 per hour for nurses' aids.

(5) Plaintiff is not due penalty interest or attorney fees under MCL 500.3148; MSA 24.13148.

From the judgment of the trial court as so entered, both parties appeal.

I. *Did the trial court err by holding that defendant was entitled to a setoff of $9,400 for social security benefits, but was not entitled to such credit after the first three years?*

Plaintiff did not cross-appeal the setoff to defendant of $9,400 for social security benefits, and thus, from a technical point of view, the issue need not be addressed. However, since defendant disputes the trial court's denial of such credits after the first three-year period, we will address the issue in full. We begin by setting forth the relevant provisions of the contract of insurance.

"PERSONAL INJURY PROTECTION COVERAGE

"The Company will pay, in accordance with Chapter 31 of the Michigan Insurance Code, to or on behalf of each *eligible injured person* or his *dependent survivors,* personal protection benefits consisting of

"(a) *allowable expenses*

"(b) *work loss,* and

"(c) *survivors' loss*

"as a result of *bodily injury* caused by accident and arising out of the ownership, operation, maintenance or use, including loading or unloading, of a motor vehicle as a *motor vehicle.*

\*    \*    \*

"Definitions

"When used in reference to this insurance:

" *'allowable expenses'* means reasonable charges incurred for reasonably necessary products, services, and accomodations *[sic],* for an eligible injured person's care, recovery or rehabilitation, including, but not limited to, expenses for medical, hospital, nursing, x-ray, dental, surgical, ambulance, funeral and burial services and prosthetic devices.

\*    \*    \*

" *'work loss'* means loss sustained during the first 3 years after the date of the accident consisting of

"(a) loss of income from work the *eligible injured person* would have performed had he not been injured, and

"(b) reasonable expense incurred in obtaining ordinary and necessary services from others in lieu of those services that, had he not been injured, the *eligible injured person* would have performed not for income but for the benefit of himself or his dependent."

"MICHIGAN PERSONAL INJURY PROTECTION ENDORSEMENT (AUTOMOBILE) AMENDATORY ENDORSEMENT NO. M5

\*    \*    \*

"[X] This insurance does not apply to the extent that any amounts are paid or payable for *allowable expenses* to or on behalf of such *named insured* or *relative* under the provisions of any other insurance, service, benefit or reimbursement plan providing similar direct benefits,

without regard to fault, for *bodily injury* sustained as a result of the operation, maintenance or use, including the loading or unloading, of a *motor vehicle*.

"[ ] This insurance does not apply to the extent that any amounts are paid or payable for *work loss* to or on behalf of such *named insured* or *relative* under the provisions of any other insurance, service, benefit or reimbursement plan providing similar direct benefits, without regard to fault, for *bodily injury* sustained as a result of the operation, maintenance or use, including the loading or unloading, of a *motor vehicle.*" (Emphasis in the original, highlighting defined terms).

The insured elected the endorsement marked with the "(X)". Under that endorsement the defendant insurer may set off its payments to the plaintiff by an amount equal to sums received by the plaintiff from other sources for "allowable expenses". Under the contract "allowable expenses" is defined as "products, services, and accommodations, for an eligible injured person's care, recovery or rehabilitation". Clearly, social security disability benefits are not "products, services, or accommodations". Their purpose is income replacement rather than "care, recovery, or rehabilitation". Such benefits have the same income replacement effect as do the work loss benefits provided by the no-fault act. *Thompson v DAIIE,* 418 Mich 610, 615; 344 NW2d 764 (1984). Therefore, the social security disability benefits are not deductible under the contract as amounts paid for "allowable expenses" under another benefit plan. Therefore, under the terms of the contract itself, the defendant was not entitled to a setoff.

Nevertheless, defendant argues that it is entitled to a setoff under MCL 500.3109(1); MSA 24.13109(1), which mandates that certain benefits must be set off without regard to the provisions of the contract:

"(1) Benefits provided or required to be provided under the laws of any state or the federal government shall be subtracted from the personal protection insurance benefits otherwise payable for the injury."

Our Supreme Court, in *Jarosz v DAIIE,* 418 Mich 565, 577; 345 NW2d 563 (1984), has provided a two-step analysis for determining whether benefits provided by the government should be subtracted from the benefits otherwise payable for the injury:

"We conclude that the correct test is: state or federal benefits 'provided or required to be provided' must be deducted from no-fault benefits under § 3109(1) if they:
"1) Serve the same purpose as the no-fault benefits, and
"2) Are provided or are required to be provided as a result of the same accident." (Footnote omitted.)

In the case at bar the social security disability benefits serve the purpose of income replacement. There was no testimony that Scott ever received any insurance payments as compensation for lost wages. To the extent that he received any compensation for "work loss", it was for replacement services, "work-loss (b)", not loss of income, "work-loss (a)". Therefore, the respected trial court erred when it ruled that defendant might have a setoff of $9,400. However, as noted earlier, the error was in defendant's favor and the plaintiff has not cross-appealed this issue. To the extent, however, that the trial court ruled that the setoff was not available to defendant after the first three years, the trial court was correct. The contract itself under "Definitions * * * work loss" limits any setoff to "loss sustained during the first three years after the date of the accident".

II. *Did the trial court err by holding that defen-*

*dant had waived the defense of the statute of limitations?*

The issue of the statute of limitations first arose at trial when the defendant objected to the plaintiff's attempt to prove the times when she had to substitute for nurses and nurse's aides who weren't provided by the nursing companies. GCR 1963, 111.3 states that "all defenses not asserted in the responsive pleading * * * are waived". GCR 1963, 111.7 states that a party "shall in separate defenses set forth the facts constituting any affirmative defense, such as * * * statute of limitations". To this argument defendant responds that it cannot set forth defenses unless it has notice of the claim in plaintiff's pleadings and that in the instant case it had no notice of the claim until the matter was raised at trial. The response has some merit. For example, see *Toussaint v Blue Cross & Blue Shield of Michigan,* 79 Mich App 429; 262 NW2d 848 (1977), in which the statute of frauds defense was held not to be waived where the plaintiff failed to plead the contractual nature of his claim.

However, the defendant's claim of no notice is not consistent with the facts. *On June 8, 1982,* Preferred Risk received notice in a letter from the plaintiff's attorney that the plaintiff had been performing "various services" for Scott Sharp which were allegedly compensable as allowable expenses. *On May 25, 1983,* Preferred Risk received notice in the second amended complaint of "nursing care services of Lily Sharp in the amount of $9,806.50 through September 1982, plus additional fees earned since that date". If the letter did not give sufficient notice, certainly the second complaint did. The second amended complaint was filed over a year before the trial. The trial court

properly ruled as a matter of law that defendant waived the statute of limitations defense.

III. *Did the trial court err when it held that rental expenses were, at least in part, allowable expenses under the no-fault act?*

Rather than sending Scott back to Kith-Haven following his rehospitalization at Flint Osteopathic Hospital, at plaintiff's suggestion and with his physician's consent Scott was moved to an apartment which plaintiff had rented for $345 a month. He remained there for 13 months and in August 1981 was moved into a larger apartment for which plaintiff paid $445 a month rent. He remained in the second apartment until the $88,000 addition built on plaintiff's home was available for occupancy. Prior to his injury Scott had been living alone in an apartment with a rental of $245 a month. Defendant refused to pay any of the rental for the two apartments, arguing that under *Manley v DAIIE*, 127 Mich App 444; 339 NW2d 205 (1983), this Court held that "accommodations which are as necessary for an uninjured person as for an injured person are not 'allowable expenses'". *Id.*, 454. At trial, plaintiff asked reimbursement for the entire rental payments. The trial court found that Scott was entitled to the difference between what apartment rental would cost him if he were uninjured and the more expensive apartments rented, and awarded $8,541 in rental.

The issue raised is of first impression. We find no case law considering whether apartment rental is an allowable expense under Michigan's no-fault act. MCL 500.3107(a); MSA 24.13107(a) defines "allowable expense" as:

"Sec. 3107. Personal protection insurance benefits are payable for the following:

"(a) Allowable expenses consisting of all reasonable

charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery or rehabilitation. Allowable expenses within personal protection insurance coverage shall not include charges for a hospital room in excess of a reasonable and customary charge for semiprivate accommodations except when the injured person requires special or intensive care, or charges for funeral and burial expenses in excess of $1,000.00.''

We think the trial court construed *Manley* too narrowly. Literally applied, the language in *Manley* would allow the cost of food served in a hospital to be disallowed either entirely, or, at least, in part. But *Manley* itself made food not furnished at home an exception to the language relied upon by defendant:

"In applying this rule, it is necessary to distinguish between injured persons for whom institutionalization in a hospital or nursing home is reasonably necessary and injured persons *cared for at home.* For example, food is as necessary for an uninjured person as for an injured person. Food, therefore, is not ordinarily an 'allowable expense' for an injured person cared for at home, unless the nature of the injury makes a special diet reasonably necessary. However, ordinarily an institutionalized injured person must obtain food through the institution, and the *cost of obtaining food through the institution presents an extraordinary expense not analogous to the cost of obtaining food at home. Therefore, for the institutionalized injured person, food obtained through the institution is ordinarily an 'allowable expense'.* " 127 Mich App. 454 (Emphasis supplied.)

We think the same reasoning applies to the cost of the apartment. As long as housing larger and better equipped is required for the injured person than would be required if he were not injured, the full cost is an "allowable expense".

Further, strong policy reasons support treating

the full rental cost of the apartment in the instant case as an allowable expense. When Scott was hospitalized at Kith-Haven it cost, and defendant paid, approximately $2,800 per month for room and board, plus the additional cost for 24-hour private nurses. In the apartment, the maximum rental was only $445 per month. Furthermore, the apartment care was unanimously considered better for Scott's rehabilitation. Applying the *Manley* general rule here would have the incongruous result of penalizing the plaintiff for saving Preferred Risk over $2,000 per month and providing better care for Scott. Such a decision could result in discouraging home care, which is less expensive and offers a higher quality of care than nursing home care in this instance. Accordingly, the ruling of the trial court on this issue is reversed and plaintiff is awarded the full rental cost of the two apartments.

IV. *Did the trial court err when it held that plaintiff could recover $5,000 for serving as a nurse's aide and for replacement services?*

This issue combines issue IV of the appeal and issue II of the cross-appeal. Defendant argues that the claim is barred by the statute of limitations, that the claim is not an allowable expense to the extent that it seeks to recover more than the actual costs incurred, and that there is no showing that plaintiff performed the services of an RN or an LPN. Defendant does agree that to the extent that plaintiff provided nursing care she should be compensated as a nurse's aide.

We disagree that the statute of limitations applies. Three separate areas of damage are involved.[1] For the reasons stated in issue II, *supra,* the statute does not apply to plaintiff's demand for

[1] First, it involves what the defendant owes Lily Sharp for performing the nurse-providing services which Kelly Health Services, Medical

reimbursement for substituting for nurses and nurse's aides. As to the other two areas, defendant never raised the defense of the statute of limitations, even at trial. Accordingly, as in issue II, the issue here has been waived.

The trial court's judgment allows plaintiff to charge an amount for the RNs, LPNs and nurse's aides plaintiff hires greater than the amount plaintiff actually pays for such services. Plaintiff pays only $9 per hour for RNs, $8 to $9 per hour for LPNs and $4 per hour for nurse's aides. Consequently, defendant argues that plaintiff is allowed to be reimbursed for more than she actually paid. Defendant's argument, if followed, would deny plaintiff compensation for the process of seeking, interviewing, selecting, training, and supervising the nurses. Neither would she be compensated for time spent computing hours that the nurses worked, billing the insurance company, and paying the nurses. Neither would plaintiff be compensated for money spent on advertisements, stationery, and other necessary expenses related to these above-mentioned activities. Presumably, the trial court could have ordered plaintiff to submit itemized bills for time spent on each of the above activities and money spent on each. Instead, the trial court ordered that she charge a fixed rate for nursing staff and pay them a lesser fixed rate. This was the same billing method used by the nursing companies that the plaintiff hired for Scott.

---

Personnel Pool, and Samaritan had done previously. This would be covered by allowable expenses under the contract and under the no-fault statute. Second, it involves what the defendant owes Lily Sharp for replacement services such as housecleaning, grocery shopping, etc., which Scott was no longer able to do for himself. These would fall under the work-loss coverage of the insurance contract and the no-fault statute. Third, it concerns what defendant owes Lily Sharp for actually performing nurse's and nurse's aid responsibilities when the nursing companies failed to fill certain shifts with the prescribed number of nurses and nurse's aides.

Furthermore, the trial court's order is consistent with *Manley.* *Manley* states that "comparison to rates charged by institutions provides a valid method for determining whether the amount of an expense was reasonable and for placing a value on comparable services performed [by family members]". 127 Mich App 455. The plaintiff charges less than similar institutions, other nursing services. What they charge would be a reasonable amount to charge for the previously mentioned acitvities and services under *Manley.* The expenses are actually incurred. Mrs. Sharp actually does advertise for nurses, interview them, train them, supervise them and, when necessary, fire them. The method of charging more per hour than actually paid is a convenient shorthand method for compensating the plaintiff for these activities. This is the same method used by the nursing companies and the plaintiff is billing less than those nursing companies were. The trial court's declaratory judgment is affirmed.

Having decided that the statute of limitations is not applicable as to plaintiff's claim for nursing services and that the trial court's judgment is declaratory of the rates per hour which plaintiff may charge, we turn to the question of whether the amount actually awarded plaintiff is proper. The trial court awarded $5,000 and plaintiff cross-appeals, claiming the sum awarded is far too small. The trial court's findings and conclusions stated:

"NURSES AIDE SERVICES
AND REPLACEMENT SERVICES

"I find that Lily Sharp is entitled to recover $5,000 for the services described on pages 9-12 of plaintiff's proposed findings under the headings 'Nurses Aide' and 'Replacement Services'."

The services described on pages 9 through 12 would include 2,176 hours of substituting for nurse's aides who were paid $4 per hour, and at least 1,269 hours of replacement services, including paperwork, banking, shopping, and picking up medical supplies. Thus, 3,445 hours of service to Scott over a three-year period were compensated at an hourly rate of approximately $1.45 per hour.

Obviously, something is wrong with the calculations. Either the number of hours which plaintiff allegedly worked is too high, or the $5,000 award is too low. At oral argument questions concerning this discrepancy were asked by the Court but were not answered. Perhaps the trial court did not intend to accept all of the activities itemized in plaintiff's proposed findings of fact. In any event, in the absence of something further, we find the findings insufficient for appellate review. *People v Ramsey*, 89 Mich App 468, 477; 280 NW2d 565 (1979). The conclusional statement that plaintiff is entitled to $5,000 for nurse's aide and replacement services, without more, is insufficient. Therefore, the question of the exact dollar amount to which plaintiff is entitled for nurse's aide and replacement services is remanded to the trial court for either a judgment consistent with the facts or further findings of fact consistent with the judgment.

V. *Did the trial court err when it held that no penalty interest or attorney fees would be allowed under MCL 500.3148; MSA 24.13148 of the no-fault act?*

In her cross-complaint plaintiff claims penalty interest with regard to rent, nursing, nurse's aides and replacement services claims. Section 3142(3) of the statute provides for simple interest at 12% per annum as a penalty for overdue no-fault benefits. Section 3142(2) defines "overdue" as a payment

not made within 30 days after an insured submits reasonable proof of the fact and amount of the loss. The trial court held:

"PENALTY INTEREST

"No penalty interest is allowed. Defendant has paid Mr. Sharp's wage loss, nursing home care, nursing expenses, and, among other things, paid nearly $90,000 for an addition to his parents' home. The issues at the trial and decided now by me were reasonable disputes and the defendant did not receive reasonable proof of the facts and of the amount of loss sustained until these findings and conclusions of mine were typed, signed and received by defendant."

In *Cook v DAIIE,* 114 Mich App 53, 55; 318 NW2d 602 (1982), this Court made a distinction between penalty interest and penalty attorney fees under the no-fault act. Penalty attorney fees are awardable under § 3148 if the insurer unreasonably refused to pay or unreasonably delayed in making payment. On the other hand, 12% penalty interest is awardable only if benefits are not paid within 30 days of "reasonable proof of the fact and of the amount of loss sustained". In the instant case, plaintiff is not seeking penalty attorney fees.

There is no case law describing what constitutes reasonable proof of the fact of a claim. In the instant case, the file contains descriptions of the time and quantum of proof defendant received of the several claims made by plaintiff. After reviewing the contents of the file and the briefs, with one exception hereinafter noted, we are unable to find the trial court's findings of fact on this issue to be clearly erroneous. Plaintiff states in her brief on appeal that she never submitted bills. Findings of

fact by a trial judge are not reversed unless "clearly erroneous". *City of Hancock v Hueter,* 118 Mich App 811, 815; 325 NW2d 591 (1982); GCR 1963, 517.1.

The exception to which we refer is plaintiff's claim for rent. The facts pertaining to that claim are simple. Early on, the defendant knew of plaintiff's rental of the two apartments, the respective monthly rental costs, and plaintiff's claim for reimbursement. Although defendant was prompt in paying Scott's hospital and extended care facility bills and had generously paid for the addition to plaintiff's home, defendant adamantly refused to pay *any part* of the apartment rental. Had defendant offered to pay the difference between the rental paid by plaintiff and the rental which Scott would have paid had he not been injured, we would feel differently. Accordingly, we award 12% interest on that part of plaintiff's claim which pertains to rental.

In summary, the trial court's judgment as to issues I and II is affirmed. Though the court erred in awarding a setoff of $9,400 as discussed in issue I, the award was not appealed by plaintiff. The judgment regarding rental costs discussed in issue III is reversed and plaintiff is awarded the full cost of the rental apartments plus interest at 12% per annum. As to issue IV, the award of $5,000 is reversed and the matter remanded to the trial court for further findings and determination. As to issue V, the trial court's ruling that 12% interest is not awardable is affirmed, except as to rental costs involved in issue III.

Affirmed in part, reversed in part, and remanded in accordance with this opinion. No costs, neither party having prevailed in full.