LENART v DETROIT AUTOMOBILE INTER-INSURANCE
EXCHANGE

Docket No. 87790. Submitted July 29, 1986, at Detroit. Decided
December 15, 1986. Leave to appeal applied for.

Plaintiff, Allen Lenart, a brakeman for the Grand Trunk Western
Railroad, was injured in an automobile accident. Following
treatment, plaintiff's doctor prescribed pain medication and
certified that plaintiff was able to return to work with restric-
tions. Grand Trunk had rules requiring that an employee be
able to work without restrictions and without pain medication
and refused to allow plaintiff to return to work until he was off
pain medication. Plaintiff brought an action against Detroit
Automobile Inter-Insurance Exchange and Henry Christie in
the Macomb Circuit Court for no-fault benefits. The court,
Robert J. Chrzanowski, J., granted plaintiff's motion for partial
summary judgment for three years worth of work-loss benefits.
Defendants appealed by leave granted, alleging that it was a
jury question as to whether or not plaintiff was disabled.

The Court of Appeals held:

Work-loss benefits under the no-fault act compensate the
injured person for income he would have received but for the
accident. Disability—the loss of earning capacity—is irrelevant.
Affirmed.

INSURANCE — NO-FAULT — WORK-LOSS BENEFITS.

Work-loss benefits under the no-fault act compensate the injured
person for income he would have received but for the accident;
the disability, the loss of earning capacity, of the injured person
is irrelevant to a determination of entitlement to work-loss
benefits (MCL 500.3107[b]; MSA 24.13107[b]).

*Salisbury & Ciampa* (by *Daryle Salisbury*), for
plaintiff.

REFERENCES

Am Jur 2d, Automobile Insurance § 361.

Validity and construction of "no-fault" automobile insurance plans.
42 ALR3d 229.

*Glime, Daoust, Wilds, Rusing & Le Duc* (by Lawrence J. Schloss), for defendants.

Before: SULLIVAN, P.J., and ALLEN, and J. T. KALLMAN,* JJ.

PER CURIAM. Defendants appeal by leave granted by this Court on October 28, 1985, from the trial court's order entered on September 20, 1984, granting plaintiff's motion for partial summary judgment under MCR 2.116(C)(9) and (10) concerning plaintiff's claim for three years of work-loss benefits under MCL 500.3107(b); MSA 24.13107(b) of the Michigan no-fault act. We affirm.

On March 14, 1982, plaintiff, a brakeman for the Grand Trunk Western Railroad, was injured in an automobile accident. Following the accident plaintiff was taken to St. Joseph Mercy Hospital where he received emergency treatment for head, neck and shoulder injuries and scalp lacerations and was then released with directions to return if he had continued problems. Plaintiff continued to have problems and returned to the hospital on March 22, 1982, where he was treated for neck, back and right elbow pains and bruising and pain in his upper chest. He was given prescription medication for pain and released with directions to consult his own physician if he did not improve.

Plaintiff continued to have problems and spent most of the time in bed or at rest at home taking the medication prescribed. When he did not improve he scheduled an April 12, 1982, appointment with Dr. E. G. Metropoulos who took x-rays and prescribed Valium and Dolobid for pain relief. On June 8, 1982, Dr. Metropoulos referred plaintiff to Dr. Myron LaBan, who continued plaintiff's treat-

* Circuit judge, sitting on the Court of Appeals by assignment.

ment and medication until September 24, 1982, when plaintiff was admitted to William Beaumont Hospital for eight days during which period plaintiff was placed in traction, given a myelogram and provided with inpatient physical therapy for his back. Dr. LaBan determined that surgery was not advisable and advised plaintiff to continue with outpatient physical therapy at Beaumont Hospital and treatments by Dr. Metropoulos.

Beginning on October 5, 1982, and continuing for the next eight weeks plaintiff was treated by Dr. Metropoulos, who in early 1983 concluded that plaintiff was able to return to work with restrictions and so advised plaintiff's company doctor. However, Grand Trunk Western Railroad, plaintiff's employer at the time of the accident, refused to allow plaintiff to return to work until plaintiff was off pain medication. Grand Trunk Western Railroad rules "G" and "C" (attached to plaintiff's affidavit) require that an employee be able to work without restrictions and without taking pain medication.

On September 9, 1985, plaintiff filed a motion for summary disposition pursuant to MCR 2.116(C)(9), alleging that defendant had failed to state a valid defense to the claim asserted. Specifically, plaintiff alleged that defendant failed to present any evidence to establish that plaintiff would be allowed to return to his employment at Grand Trunk Western Railroad. With its motion, plaintiff filed an affidavit, deposition excerpts and exhibits, including plaintiff's employers' Rules "G" and "C" which forbade employees who were taking the kind of drugs prescribed for plaintiff from working.

Defendants filed no affidavits but filed a response which contained references to two deposition transcripts of defendant insurer's medical experts, Dr.

Jarlath Quinn and Dr. Theodoulou. Each expressed the opinion that plaintiff could return to work. Dr. Quinn testified in deposition that his examination of plaintiff revealed no objective findings of injury to plaintiff and that plaintiff was capable of returning to work. Dr. Quinn also testified that the pain medication plaintiff was taking was not medically warranted for his treatment.

At the conclusion of the hearing on the motion on September 16, 1985, the trial judge granted plaintiff partial summary disposition as to plaintiff's entitlement to three years of work-loss benefits. The court found that the statute speaks of work that a person would have performed if he had not been injured and that plaintiff's medication kept plaintiff from being able to return to work. The court ruled that whether the doctors who testified for defendants thought plaintiff's medication was not appropriate was a collateral issue which did not affect the fact that plaintiff had followed his doctors' treatment after his auto accident and was kept from returning to work, thereby incurring loss of income from work loss.

> *The Court:* So, you're saying that this man is able to go back to work if not for the prescriptions or the medication prescribed by Dr. Metropoulos?
>
> *Mr. Schloss* [*Defendants' Attorney*]: Well, we're saying he's able to go back to work.
>
> *The Court:* But he can't because of the prescriptions.
>
> *Mr. Schloss:* And, number two, the problem that he has, according to his employer that he can't return to work because of the drugs is his own doctor's treatment, which is unnecessary, and that's causing his problem at work.
>
> *The Court:* I'll grant the motion for summary disposition if that's your position.
>
> *Mr. Salisbury:* [*Plaintiff's Attorney*]: Thank you, your Honor.

*The Court:* You cannot hold it against the Plaintiff because he is honestly following the medication prescribed by his treating physician.

*Mr. Schloss:* Is the Court then aware that the Defendant is prepared to present testimony that this man is, in fact, not disabled, and, number two, the treatment he's received is not reasonable?

*The Court:* There's nothing the statute says about disabled. The statute states that work loss consisting of loss of income for work an injured person would have performed during the three years after the date of the accident if he had not been injured. He can't go back.

*Mr. Schloss:* I can present testimony that that is not the fact. We're prepared to present testimony that he was not disabled, and that's medical testimony.

*The Court:* The question is: Can he go back to work? The answer is no because Dr. Metropoulos is prescribing medication for him that his employer—

*Mr. Schloss:* (Interposing) That's what the Plaintiff says.

*Mr. Salisbury:* Your Honor, we went six months past the cut-off date. He has not been able to return to work. I mean if he's arguing even malingering, it doesn't even apply.

I think that what Triple A is arguing is the reasonableness and necessity of medical care. That gets into the issues as to whether or not it was necessary, but my client from a wage loss standpoint is totally innocent. He's caught in the middle.

*Mr. Schloss:* His own doctor, his own orthopedic doctor, states at page 28 of his deposition, "I find nothing objectively wrong. There's no objective findings." At page 39, he admits in his cross-examination that not losing any money as a result of being off work—in other words, he's compensated from a collateral source—would be some motivation for not working.

We have questions in this case as to whether the man, number one, was disabled—

*The Court:* I'm going to make one statement, the last statement: If the facts are that this man's employer will not hire him because his treating physician is prescribing medication as a result of his injuries, then Triple A has to pay.

*Mr. Schloss:* Well, Judge, that's a jury question. That's a question that the jury ought to decide, if the man is disabled as a result of the car accident or if he's disabled—

*The Court:* It's not a question of disability. The question is is he able to do the type of work he could perform prior to the accident. If he can't do it because his doctor's prescribing certain medication, you have to pay.

In conformity with the court's pronouncement from the bench, a written order granting partial summary disposition under MCR 2.116(C)(9) and (10) was issued September 20, 1985. Left for trial were the issues pertaining to plaintiff's claim for replacement services and medical expense. Defendants' emergency application for leave to appeal was granted by this Court on October 28, 1985.

Our decision in this case concerns the propriety of the trial court's ruling under MCR 2.116(C)(10), viz.: that there was no genuine issue as to any material fact and that plaintiff was entitled to three years worth of work-loss benefits as a matter of law.[1] On this issue plaintiff argues, and the trial court found, that the no-fault statute requires actual work loss due to an injury and does not require that plaintiff be found to be disabled. In

[1] While the trial court's order was issued both under subsections (C)(9) and (C)(10), and defendants' first issue concerns the propriety of the ruling under (C)(9), viz.: —failure to state a valid defense—it is apparent that the appeal is more properly considered under (C)(10). A motion based upon a failure to state a valid defense is tested solely by reference to the pleadings. *Pontiac Schools Dist v Bloomfield Twp,* 417 Mich 579, 585; 339 NW2d 465 (1983). In the instant case both parties submitted depositions and plaintiff submitted an affidavit. Hence this case is properly to be decided under (C)(10).

support of this proposition, plaintiff cites *MacDonald v State Farm Mutual Ins Co,* 419 Mich 146, 151-152; 350 NW2d 233 (1984), and *Nawrocki v Hawkeye Security Ins Co,* 83 Mich App 135, 136; 368 NW2d 317 (1978). Defendants argue that the depositions of defendants' two medical experts reveal plaintiff was not disabled because of the automobile accident, did not require Valium or Dolobid for pain relief, and could have returned to work during the statutory three-year period. According to defendants the issue is not whether plaintiff's employer will allow him to return to work but whether plaintiff can return to work without medication. Defendants contend this is a question of fact for jury determination.

Defendants' doctors' depositions clearly raised a factual dispute as to the medical necessity of plaintiff's having taken pain medication. Not only did defendants' doctors state that pain medication was not necessary, they also stated that plaintiff was not disabled. Whether the factual issue so raised is a no-fault issue which properly should go to the jury has never been decided. However, under *Swantek v Automobile Club of Michigan Ins Group,* 118 Mich App 807; 325 NW2d 588 (1982), guidance on the question raised can be found in decisions under the Workers' Disability Compensation Act.

> Both workers' compensation and automobile insurance are remedial no-fault systems. *It is reasonable to interpret similar provisions in the statutes governing these systems in the same light. Visconti v Detroit Automobile Inter-Ins Exchange,* 90 Mich App 477, 482; 282 NW2d 360 (1979). MCL 500.3107(a); MSA 24.13107(a) is similar to the analogous "allowable medical expense" provision in the workers' compensation act. MCL 418.315; MSA 17.237(315); *Visconti, supra,* p 479. We think

the intent of the Legislature in enacting the medical expense provision of the two statutes was the same. To effectuate the legislative intent, the two provisions should be interpreted in the same manner. [Emphasis added. 118 Mich App 810.]

Turning to workers' compensation law, we find an analogous, albeit by contrast, area for comparison in *Dressler v Grand Rapids Die Casting Corp*, 402 Mich 243; 262 NW2d 629 (1978). In that case plaintiff injured his back when he fell while employed by defendant. However, within a short time of the fall plaintiff was able to perform his regular job duties, albeit in so doing he suffered considerable pain. The Supreme Court held that under workers' compensation an employee must show a work-related injury causing an *impairment of wage-earning capacity.* The Court stated at pp 251-253:

Larson goes on to explain "that the distinctive feature of the compensation system . . . is that its awards (apart from medical benefits) are made not for physical injury as such, but for "disability" produced by such injury". Larson, *supra,* § 57.10 (Authority omitted.)

\* \* \*

Further, although plaintiff suffered pain during substantially all of his employment from the time of his initial injury, the existence of an injury and pain therefrom do not necessarily create disability. As quoted above, "the distinctive feature of the compensation system . . . is that its awards (apart from medical benefits) are made not for physical injury as such, but for 'disability' produced by such injury." Plaintiff was not disabled, despite the pain suffered in his successive jobs, until the pain became so extreme as to force his excessive absence from work at Michigan Plating, and his employment there was terminated.

The question of the degree of pain and at what point the pain became so excessive as to *incapacitate* plaintiff from working regularly was held by the Supreme Court to be a question for determination by the trier of fact, the Workers' Compensation Appeal Board.

However, as plaintiff has pointed out, the no-fault automobile insurance law does not compensate for loss of wage-earning capacity, but instead compensates for *actual loss* of earnings flowing from the accident. *MacDonald, supra; Nawrocki, supra.* Recently in *Ouellette v Kenealy,* 424 Mich 83; 378 NW2d 470 (1985), the Supreme Court reaffirmed its holding in *MacDonald,* saying:

> Section 3107 of the no-fault act provides that personal protection benefits are payable for "work loss" consisting of "loss of income from work an injured person would have performed during the first 3 years after the date of the accident if he had not been injured. . . . " [MCL 500.3107; MSA 24.13107].
>
> * * *
>
> "A reading of both the clear language of § 3107(b) and the drafter's comment to the uniform act leads us to conclude that work-loss benefits are available to compensate only for that amount that the injured person would have received had his automobile accident not occurred. Stated otherwise, *work-loss benefits compensate the injured person for income he would have received but for the accident.* [*MacDonald, supra,* pp 151-152.]" [*Ouellette, supra,* pp 86, 87. Emphasis supplied.]

Application of the "but for" language in *Ouelette* and *MacDonald* compels us to conclude that the trial court did not err in granting summary judgment under MCR 2.116(C)(10). "But for" the automobile accident, plaintiff would not have begun treatment by Dr. Metropoulos who prescribed

pain medication and who referred plaintiff to two other physicians who also advised continuing with the treatment prescribed by Dr. Metropoulos. "But for" the pain medication plaintiff considered himself fit to return to work and would have commenced work "but for" his employer's policy rules "G" and "C." It is uncontroverted that plaintiff was not allowed to return as a consequence of the pain medication prescribed for him after the automobile accident. Plaintiff therefore suffered work loss as a direct consequence of his injury. The defenses raised by the depositions of defendants' medical experts go to plaintiff's *capacity* to work rather than to the actual loss of wages flowing from the accident.

Affirmed.