BAK v CITIZENS INSURANCE COMPANY OF AMERICA

Docket No. 132904. Submitted November 4, 1992, at Detroit. Decided June 7, 1993, at 9:05 A.M.

Annette F. Bak brought an action in the Oakland Circuit Court against Citizens Insurance Company of America, seeking a full three years of no-fault work-loss benefits. The defendant had paid work-loss benefits to the plaintiff from April 1987, when she was found to be disabled as a result of an automobile accident and unable to continue her employment until May 1988, when it was found that she was no longer disabled. The plaintiff moved to bar the defendant from raising and offering proofs at trial supporting the defense that she failed to mitigate damages by failing to seek other employment. The court, Robert L. Templin, J., denied the motion. The plaintiff appealed by leave granted.

The Court of Appeals *held:*

A no-fault insurer may raise the defense of failure to mitigate damages in an action by an insured seeking work-loss benefits under § 3107(b) of the no-fault act, MCL 500.3107(b); MSA 24.13107(b), where the insured has failed to seek employment after a covered disability no longer exists. The reasonableness of mitigation under the circumstances is a question of fact for the jury.

CORRIGAN, J., stated that the Legislature's refusal to incorporate into the no-fault act the language of the Uniform Motor Vehicle Accident Reparations Act relating to the reduction of work-loss benefits by the amount an injured claimant could have earned at substitute employment did not abrogate the common-law duty to mitigate damages.

HOLBROOK, JR., J., concurring, stated general agreement with the opinion of CORRIGAN, J., but wrote separately to explicate his position in this case in light of his concurring vote in *Marquis v Hartford Accident & Indemnity (On Remand),* 195

REFERENCES

Am Jur 2d, Automobile Insurance §§ 361, 368; Damages §§ 492 *et seq.*

Validity and construction of "no-fault" automobile insurance plans. 42 ALR3d 229.

Mich App 286 (1992). Section 3107(b) requires no-fault insurers to compensate employees not for work that would have been performed in the absence of insurance benefits, but for loss of income due to accidents.

Affirmed.

FITZGERALD, P.J., dissenting, stated that the decision of the trial court should be reversed because the Legislature's refusal to incorporate the language of the uniform act in the no-fault act creates a presumption that it had considered and rejected the idea that the failure to mitigate work-loss damages by actively seeking alternative employment is a total defense to an insurer's obligation to pay work-loss benefits.

INSURANCE — NO-FAULT — WORK-LOSS BENEFITS — MITIGATION.

A no-fault insurer may raise the defense of failure to mitigate damages in an action by an insured to recover work-loss benefits under the no-fault act where the insured failed to seek employment after the disability that had caused the work-loss benefits to be paid ceased to exist; the reasonableness of mitigation under the particular circumstances is a question for the trier of fact (MCL 500.3107[b]; MSA 24.13107[b]).

*Law Offices of Schwartz & Jalkanen* (by *Melvin R. Schwartz* and *Ralph C. Chapa, Jr.*), for the plaintiff.

*Still, Nemier, Tolari & Landry, P.C.* (by *Rik Mazzeo*), for the defendant.

Before: FITZGERALD, P.J., and HOLBROOK, JR., and CORRIGAN, JJ.

CORRIGAN, J. Plaintiff, asserting the right to three full years of no-fault work-loss benefits, MCL 500.3107(b); MSA 24.13107(b), sued defendant insurer for breach of contract. Shortly before trial, plaintiff moved in limine to bar defendant from proving as a defense her failure to mitigate damages, i.e., to seek other employment. Plaintiff appeals by leave granted the circuit court's denial of her motion in limine to bar a defense of mitigation of damages. We affirm the circuit court's ruling.

Plaintiff was injured in an automobile accident on January 8, 1987. A registered nurse, she was then employed as head operating room nurse at South Macomb Hospital. Her job involved administrative and nursing duties as well as lifting and moving patients and equipment. In April 1987, a treating physician found her disabled, i.e., unable to perform that job or one similar to it. Her position as head nurse was subsequently filled.

Plaintiff has neither worked full-time nor sought employment since the accident. She has, however, worked part-time as an administrator at her fiance's medical clinic and returned to college. She satisfied all requirements for a B.S. degree in nursing in August 1988.

Defendant no-fault insurer paid plaintiff's work-loss benefits pursuant to MCL 500.3107(b); MSA 24.13107(b) until May 1988, when a medical examination at defendant's request found plaintiff no longer disabled. Section 3107(b) provides that a no-fault insurer must pay benefits for:

> Work loss consisting of loss of income from work an injured person would have performed during the first three years after the date of the accident if he had not been injured.

In a breach of contract action, the availability of a defense is a question of law. *Sharp v Preferred Risk Mut Ins Co,* 142 Mich App 499, 509-510; 370 NW2d 619 (1985); *Jacobs v DAIIE,* 107 Mich App 424, 432; 309 NW2d 627 (1981). A question of law is subject to review de novo. *Cardinal Mooney High School v Michigan High School Athletic Ass'n,* 437 Mich 75, 80; 467 NW2d 21 (1991).

Plaintiff contends that because she could not return to her former job, her right to work-loss benefits for three years became irrevocable and

she had no duty to seek other employment. We disagree. When a work-loss plaintiff *has* earned income from another job, no-fault benefits are correspondingly reduced. *Snellenberger v Celina Mut Ins Co,* 167 Mich App 83, 85; 421 NW2d 579 (1988). Further, a plaintiff cannot obtain work-loss benefits for a period in which he would be disabled from working, regardless of the accident. *MacDonald v State Farm Ins Co,* 419 Mich 146, 152; 350 NW2d 233 (1984). In addition, a claimant eligible for workers' compensation benefits must make reasonable efforts to obtain them if he also seeks no-fault payments. *Perez v State Farm Mut Auto Ins Co,* 418 Mich 634, 645-646; 344 NW2d 773 (1984). Our cases do not reveal an automatic right to work-loss benefits, without any regard for surrounding circumstances.

*Marquis v Hartford Accident & Indemnity (On Remand),* 195 Mich App 286; 489 NW2d 207 (1992), is relevant to the resolution of the mitigation of damages question. The plaintiff could not return to her preinjury job because it had been filled. The defendant initially paid her work-loss benefits based on her original wage level. The plaintiff then took a lower-paying job, which she quit after six weeks. She sued for work-loss benefits, arguing that the insurer was liable for eighty-five percent of the difference between her pre- and postinjury wages. Significantly, this Court held the insurer liable for *only* the wage differential after the plaintiff quit the second job:

> The question here is not whether plaintiff should have the same work-loss benefits after she voluntarily quit her new job as she received before she began it. *She should not* [Emphasis supplied. *Id.* at 289.]
> Our decision in this case, to continue benefits based on the pay differential *does not reward*

*plaintiff for quitting*; it also does not reward defendant for the happenstance that plaintiff's new job did not work out. [Emphasis supplied. *Id.* at 290.]

Although the *Marquis* Court did not explicitly discuss mitigation of damages,[1] the panel obviously recognized the plaintiff's responsibility for minimizing her losses. The Court refrained from "reward[ing] plaintiff for quitting." It did not hold that her no-fault insurer was required to resume paying her what she earned before she took the second job.

*Kirksey v Manitoba Public Ins Corp,* 191 Mich App 12; 477 NW2d 442 (1991), is also relevant. The defendant calculated the plaintiff's work-loss benefits based on his wages from one employer, but the plaintiff presented evidence that he would have been hired by another employer at a higher pay rate. This Court held that the question properly went to the jury:

If the injured person is able to show convincingly that he would have changed jobs and earned a higher income, then he should be entitled to increased work-loss benefits. [*Id.* at 16.]

If a plaintiff can show entitlement to greater work-loss benefits because he would have increased his earnings by his own initiative, a defendant should be allowed to prove that plaintiff could have increased her income had she tried.

In *Coates v Michigan Mut Ins Co,* 105 Mich App 290; 306 NW2d 484 (1981), the plaintiff was injured and his truck was damaged in the same accident. After he recovered, he declined to return

---

[1] The parties did not consider mitigation an issue. The plaintiff "admit[ted] that since she voluntarily quit her employment, she has failed to mitigate her damages." 195 Mich App 292, n 1 (GRIFFIN, J., dissenting).

to work until the truck had been repaired to his satisfaction. This Court refused him work-loss benefits for that period. The work lost *"resulted from [the plaintiff's] decision,* however valid, to replace his truck because he felt it was not safely operable." *Id.* at 298 (emphasis supplied). Again, the Court did not require payment of benefits for time when a claimant could have worked but did not.

Plaintiff relies primarily on *Lenart v DAIIE,* 156 Mich App 669; 401 NW2d 900 (1986), and *Nawrocki v Hawkeye Security Ins Co,* 83 Mich App 135; 268 NW2d 317 (1978). These cases are not dispositive. In *Lenart,* the plaintiff's employer did not permit him to resume his preinjury position because he was still taking medication. In a suit for work-loss benefits, the plaintiff was granted summary disposition. This Court affirmed, applying a "but for" analysis of causation—but for the injury, the plaintiff would not have required medication and but for the medication, he would have been able to return to his former job. 156 Mich App 677-678. *Lenart,* however, did not squarely consider the duty to mitigate damages,[2] and the opinion does not suggest that the plaintiff could have found alternative employment.

Like the plaintiff in *Lenart,* the plaintiff in *Nawrocki* could not return to his original job. His position had been filled and he could not find other work. However, the plaintiff had attempted to find other work. 83 Mich App 137. Although not outcome determinative, the plaintiff's attempt to find work was a factor that the *Nawrocki* Court weighed. The conclusion that plaintiff emphasizes, that the statute "requires no more than that the

---

[2] *Lenart's* holding that the defendant could not contest the reasonableness of the medical treatment that prevented the plaintiff from returning to work does not appear to survive in light of *Nasser v Auto Club Ins Ass'n,* 435 Mich 33; 457 NW2d 637 (1990).

work be lost as a direct consequence of the injury," *id.* at 144, says nothing about an insured's obligation to mitigate damages.

In both contract and tort actions, an injured party must make every reasonable effort to minimize damages. *Williams v American Title Ins Co,* 83 Mich App 686, 697; 269 NW2d 481 (1978). See also, e.g., *Rasheed v Chrysler Motors Corp,* 196 Mich App 196, 204; 493 NW2d 104 (1992) (employee who is wrongfully discharged has an obligation to mitigate damages by accepting employment of a "like nature"); *May v William Beaumont Hosp,* 180 Mich App 728, 756; 448 NW2d 497 (1989) (in determining loss of lifetime earning capacity, earnings should be offset by wages that "it may reasonably be anticipated the plaintiff will earn"). The general principle of mitigation thus should apply to no-fault work-loss suits unless the Legislature intended to abrogate the common-law doctrine of mitigation.

The Michigan no-fault act is based upon the Uniform Motor Vehicle Accident Reparations Act (UMVARA), 14 ULA, Civil Procedural & Remedial Laws, pp 35-124. *Nawrocki, supra* at 143. The Legislature agreed with the policies that underlie the model act's language. *Miller v State Farm Mut Auto Ins Co,* 410 Mich 538, 559; 302 NW2d 537 (1981) (expenses payable as survivor's loss). The UMVARA's definition of "work loss" deviates in several respects from that adopted in § 3107(b). The UMVARA, § 1(a)(5)(ii), 14 ULA, p 43, provides:

"Work loss" means loss of income from work the injured person would have performed if he had not been injured, and expenses reasonably incurred by him in obtaining services in lieu of those he would have performed for income, reduced by any income he would have earned in available appropriate

substitute work he was capable of performing but unreasonably failed to undertake.

The UMVARA's definition is more generous than § 3107(b) in allowing compensation for expenses "reasonably incurred . . . in obtaining services in lieu of those [the injured person] would have performed for income" (compare *Kerby v Auto-Owners Ins Co,* 187 Mich App 552; 468 NW2d 276 [1991], holding that work-loss benefits do not include payment for substitute services in a profit-making enterprise). The UMVARA's definition at the same time is more restrictive because it expressly reduces benefits "by any income from substitute work actually performed . . . or by income [the insured] would have earned in available appropriate substitute work he was capable of performing but unreasonably failed to undertake." The latter is described in the drafters' comments to the UMVARA, § 1, 14 ULA, p 46, as "the common law doctrine of avoidable consequences."

We do not share defendant's view that Michigan courts, by favorably citing the drafters' commentary, somehow impliedly have engrafted the avoidable consequences language on our statute. Conversely, given the mixed features of the UMVARA's definition of work loss, the Legislature's failure to adopt it in toto does not command the conclusion that the Legislature has abrogated the common-law duty to mitigate. To draw that conclusion would be an unnatural reading. Cf. *Spencer v Hartford Accident & Indemnity Co,* 179 Mich App 389, 399; 445 NW2d 520 (1989) (failure to enact a comparable UMVARA provision creates a presumption that the Legislature rejected the proposed language).

The enactment of the no-fault act did not extinguish common-law doctrines predating that legisla-

tion. *Adams v Auto Club Ins Ass'n,* 154 Mich App 186, 194-195; 397 NW2d 262 (1986) (the common-law rule permitting recoupment of payments not abolished by the no-fault act). See also *Struble v DAIIE,* 86 Mich App 245, 250; 272 NW2d 617 (1978) (common-law tort rule "should not be considered as abrogated unless there is a clear intent to do so," citing 73 Am Jur 2d, Statutes, § 181, p 384); *Rusinek v Schultz, Snyder & Steele Lumber Co,* 411 Mich 502, 508; 309 NW2d 163 (1981) (no-fault act did not abolish common-law actions for loss of consortium). The statute must not be construed to abrogate established common-law principles by implication. *Id.* at 507-508. Because the no-fault act did not specifically abrogate the common-law principle of mitigation, the defense remains available.

The question is how to interpret the statute's provision that work-loss benefits are payable "for work the injured person *would* have performed." MCL 500.3107(b); MSA 24.13107(b) (emphasis supplied). The teachers' tenure act, MCL 38.71 *et seq.*; MSA 15.1971 *et seq.*, provides a similar problem of interpretation. Under that statute, if a suspended teacher is reinstated after an appeal to the tenure commission, "the teacher shall be entitled to *all salary lost* as a result of such suspension." MCL 38.103; MSA 15.2003 (emphasis supplied). In *Shiffer v Gibralter School Dist Bd of Ed,* 393 Mich 190; 224 NW2d 255 (1974), the Supreme Court held that "all salary lost" refers only to the difference between a teacher's prior salary and income received from any alternate employment during the appeal, rather than the full salary he would have received. *Id.* at 199-200. "There is no need to jettison *the sound principles of mitigation of loss* generally applied by courts and administrative

tribunals throughout the land." *Id.* at 208 (emphasis supplied).

Statutes must be interpreted as a whole. Whenever possible, one section of a statute should be read in harmony with the remainder. *Michigan Millers Mut Ins Co v West Detroit Building Co, Inc,* 196 Mich App 367, 373; 494 NW2d 1 (1992). Section 3107(a) requires insurers to pay "all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, *or rehabilitation.*" MCL 500.3107(a); MSA 24.13107(a) (emphasis supplied). If one goal of § 3107(a) is rehabilitation of those injured in motor vehicle accidents, then the provision for work-loss coverage in § 3107(b) should be "read in harmony" to encourage rehabilitation as well. To relieve an insured of the duty to mitigate would place the goals of § 3107(a) at odds with those of § 3107(b).

Reasonableness of mitigation is a question of fact. *Snell v UACC Midwest, Inc,* 194 Mich App 511, 516; 487 NW2d 772 (1992). Section 3107(b) requires defendant to pay plaintiff for work she "*would* have performed" in the three years after the accident. What work plaintiff "would have" performed is what she would have done in the absence of insurance benefits. Had plaintiff been injured in a noncompensable accident, she would have been motivated to return to productive employment as soon as possible. The jury should decide what work plaintiff could have found and whether she reasonably should have taken it.[3]

Affirmed.

---

[3] We emphasize that we are not holding, contrary to the suggestion in footnote 2 of the dissent, that as a matter of law plaintiff was necessarily obliged to take any employment offered to her. Whether her decision not to seek alternative employment was a reasonable one will be for the jury to determine.

HOLBROOK, JR., J. *(concurring).* I concur with Judge CORRIGAN's opinion, but write separately to explicate my position on the issue presented in light of my concurring vote in *Marquis v Hartford Accident & Indemnity (On Remand),* 195 Mich App 286; 489 NW2d 207 (1992).

In *Marquis,* the plaintiff was disabled from her employment because of an automobile injury. When she was medically able to return to work, she could not return to her employer because a permanent replacement had filled her position. The defendant no-fault insurer initially paid her work-loss benefits. The plaintiff then began working for a new employer. Her new job paid less than her preinjury position, and she voluntary resigned within two months. The issue presented to this Court in *Marquis* was whether the plaintiff was entitled to eighty-five percent of the difference in the compensation levels of her two jobs. This Court held that the defendant was responsible for eighty-five percent of the wage differential for the time after the plaintiff returned to work and after she quit her subsequent employment. *Id.*

I concurred with Judge KELLY's opinion in *Marquis* that the plaintiff was entitled to eighty-five percent of the difference in the compensation levels of her two jobs even for the time after she quit her second job, primarily for two reasons. First, the plaintiff had made a good-faith effort in finding another job. Second, the plaintiff in *Marquis* did not ask to be rewarded for quitting by seeking the difference between her preinjury wage and zero. Judge KELLY's opinion stated that the plaintiff should not have the same work-loss benefits after she voluntarily quit her new job. However, the issue of mitigation of damages was not presented to this Court in *Marquis.* I believe that § 3107(b), MCL 500.3107(b); MSA 24.13107(b), requires the

no-fault insurer to compensate the employee *not* for work she would have performed in the absence of insurance benefits (as Judge CORRIGAN postulates in the present case), but for loss of income due to the accident. Accordingly, compensating the plaintiff in *Marquis* with eighty-five percent of the difference in the compensation levels was consistent with the mandate of § 3107(b) that work loss consists of "loss of income from work an injured person would have performed" but for the accident.

In the present case, I concur with Judge CORRIGAN's opinion because I believe that an employee losing a job under these circumstances has the duty to mitigate by seeking other employment. Although I agree with Judge CORRIGAN that reasonableness of mitigation is a question of fact, I would welcome standards (preferably from the Legislature) that might quell the onslaught of litigation regarding the "reasonableness" of mitigation our holding is bound to initiate.

FITZGERALD, P.J. *(dissenting)*. We are asked to determine whether plaintiff, who is not disabled in the sense of being unable to perform any work, is entitled to work-loss benefits because she was initially unable to return to her job on account of her injuries and her job has since been filled. Specifically, the inquiry is whether a plaintiff has a duty to mitigate damages by seeking alternative employment that the disability does not prohibit. I do not believe that MCL 500.3107(b); MSA 24.13107(b) imposes such a duty and, therefore, I would reverse the trial court's denial of plaintiff's motion in limine to bar a mitigation of damages defense.

Section 3107(b) provides that a no-fault insurer must pay benefits for:

Work loss consisting of loss of income from work

an injured person would have performed during the first three years after the date of the accident if he had not been injured.

In *Ouellette v Kenealy,* 424 Mich 83, 86; 378 NW2d 470 (1985), the Court stated that Michigan's no-fault act is patterned after the Uniform Motor Vehicle Accident Reparations Act (UMVARA) and that the drafter's comments and the provisions of the UMVARA may be looked to for guidance when construing provisions of our no-fault act. In *Spencer v Hartford Accident & Indemnity Co,* 179 Mich App 389, 399; 445 NW2d 520 (1989), this Court stated that in cases where the Legislature failed to enact a comparable portion of the UMVARA, a presumption exists that the Legislature considered but rejected the proposed language.

Section 1(a)(5)(ii) of the UMVARA[1] provides:

"Work loss" means loss of income from work the injured person would have performed if he had not been injured . . . *reduced by any income from substitute work actually performed by him or by income he would have earned in available appropriate substitute work he was capable of performing but reasonably failed to undertake.*

The drafter's comments to this subsection provide in part:

Finally, the definition contains an explicit reference to the doctrine of avoidable consequences—work loss is computed by subtracting not only income from work which the injured person undertook in lieu of that which his injury prevented him from performing but also income which he might have earned in available appropriate substitute work. As under the common law doctrine of avoid-

---

[1] See 14 ULA, Civil Procedural & Remedial Laws, p 43.

able consequences, the issue is whether claimed work loss is justly attributable to the injury. Subtraction of potential income from alternate work which the injured person declines is proper only where, under all the circumstances, the alternate work is "appropriate" and the injured person's refusal to undertake the work is "unreasonable."[2]

Under the reasoning of this Court's decision in *Spencer,* the Legislature's failure to adopt the avoidable consequences language contained in the UMVARA creates a presumption that it was considered but rejected. Section 3107(b) requires defendant to pay plaintiff for work she "*would* have performed" in the three years after the accident.[3] Consequently, plaintiff's failure to mitigate damages by actively seeking alternative employment that she would not have performed but for the injury is not a total defense to defendant's duty to pay work-loss benefits.[4]

[2] 14 ULA, p 46.

[3] Here, plaintiff would have continued in her employment as head operating room nurse at South Macomb Hospital. To accept the majority's position is to generally construe § 3107(b) to require an injured plaintiff to accept any employment, regardless of the plaintiff's level of training or skill.

[4] I agree with the majority's conclusion that when a person receiving work-loss benefits has earned income from another job, the no-fault benefits are correspondingly reduced during the period of employment.