SNELLENBERGER v CELINA MUTUAL INSURANCE COMPANY

Docket No. 99312. Submitted November 5, 1987, at Grand Rapids. Decided March 8, 1988. Leave to appeal applied for.

Lewis Snellenberger was injured in an automobile accident. For a while Snellenberger worked for his employer at a lighter job paying less than his regular job. Snellenberger brought an action in the Muskegon Circuit Court against Celina Mutual Insurance Company for no-fault work-loss benefits for the period during which he was working at the lighter job. The court, Ronald H. Pannucci, J., granted summary disposition for plaintiff. Defendant appealed, alleging that the court erred in calculating plaintiff's work-loss benefits.

The Court of Appeals *held:*

Workers' compensation benefits received by an insured as a result of an automobile accident and income earned by the injured person during the period in question are to be set off against the statutory maximum benefit payable under the no-fault automobile insurance act rather than against the insured's actual lost income less the statutory fifteen percent tax adjustment.

Reversed and remanded.

INSURANCE — NO-FAULT — PERSONAL PROTECTION BENEFITS — WORKERS' COMPENSATION — SETOFFS.

Workers' compensation benefits received by an insured as a result of an automobile accident and income earned by the injured person during the period in question are to be set off against the statutory maximum benefit payable under the no-fault automobile insurance act rather than against the insured's actual lost income less the statutory fifteen percent tax adjustment (MCL 500.3107[b], 500.3109[1]; MSA 24.13107[b], 24.13109[1]).

REFERENCES

Am Jur 2d, Automobile Insurance § 368.

Validity and construction of no-fault insurance plans providing for reduction of benefits otherwise payable by amounts receivable from independent collateral sources. 10 ALR4th 996.

*McCroskey, Feldman, Cochrane & Brock, P.C.* (by *Robert O. Chessman*), for plaintiff.

*James D. Townsend,* for defendant.

Before: WAHLS, P.J., and BEASLEY and D. A. BURRESS,* JJ.

WAHLS, P.J. Defendant, Celina Mutual Insurance Company, appeals as of right from a February 25, 1987, judgment of the Muskegon Circuit Court granting summary disposition in favor of plaintiff, Lewis Snellenberger, and ordering defendant to pay plaintiff $1,136.16 per month in no-fault work-loss benefits from April 6, 1985, through June 20, 1987. We reverse and remand for further proceedings consistent with this opinion.

Plaintiff states that on June 20, 1984, he was injured in a motor vehicle accident. According to plaintiff, although defendant initially paid work-loss benefits pursuant to MCL 500.3107(b); MSA 24.13107(b) in the proper amount, it failed to fully pay such benefits after April 6, 1985, when plaintiff began working for his employer in "a lighter job which he could handle within the restrictions placed on him by his treating physician." This "lighter job" paid significantly less money than plaintiff's preinjury position. Each of the parties filed a motion for summary disposition under MCR 2.116(C)(10), and on January 30, 1987, the Muskegon Circuit Court issued an opinion favorable to plaintiff. The court decided the issues based on the briefs submitted, as neither party requested oral argument. In its February 25, 1987, judgment, the court directed defendant to pay plaintiff $1,136.16 per month in no-fault work-loss benefits from April 6, 1985, through June 20, 1987, subject to

---

* Circuit judge, sitting on the Court of Appeals by assignment.

plaintiff's reattainment of his preinjury wages. Defendant now appeals, arguing that the court erred in calculating plaintiff's work-loss benefits under MCL 500.3107(b); MSA 24.13107(b) and MCL 500.3109(1); MSA 24.13109(1) in the no-fault act. Defendant especially contends that the monthly wages plaintiff earned in his postinjury job and the monthly workers' compensation benefits he received must be deducted from the applicable maximum work-loss entitlement under the no-fault act. We agree.

MCL 500.3107; MSA 24.13107 provides, in pertinent part:

Personal protection insurance benefits are payable for the following:

\* \* \*

(b) Work loss consisting of loss of income from work an injured person would have performed during the first 3 years after the date of the accident if he had not been injured and expenses not exceeding $20.00 per day, reasonably incurred in obtaining ordinary and necessary services in lieu of those that, if he had not been injured, an injured person would have performed during the first 3 years after the date of the accident, not for income but for the benefit of himself or of his dependent. Work loss does not include any loss after the date on which the injured person dies. Because the benefits received from personal protection insurance for loss of income are not taxable income, the benefits payable for such loss of income shall be reduced 15% unless the claimant presents to the insurer in support of his claim reasonable proof of a lower value of the income tax advantage in his case, in which case the lower value shall apply. The benefits payable for work loss sustained in a single 30-day period and the income earned by an injured person for work during the same period together shall not exceed [$2,252.00,] which maximum shall apply pro rata

to any lesser period of work loss. The maximum shall be adjusted annually to reflect changes in the cost of living under rules prescribed by the commissioner but any change in the maximum shall apply only to benefits arising out of accidents occurring subsequent to the date of change in the maximum.

Thus, according to § 3107 of the no-fault act, the plaintiff in this case is entitled to receive the loss of income from work he would have performed between June 20, 1984, and June 20, 1987, minus fifteen percent. His work-loss benefits during any thirty-day period, however, when added to income earned during that same period, cannot exceed $2,252.[1] At the time of his injury, plaintiff's monthly income alone was $3,302.56.[2] This amount minus fifteen percent is $2,807.18—a figure higher than the applicable statutory maximum of $2,252. Therefore, the maximum monthly amount of work-loss benefits payable to plaintiff is $2,252.

Section 3107(b) specifies that "[t]he benefits payable for work loss sustained in a single 30-day period *and* the income earned by an injured person for work during the same period *together* shall not exceed [$2,252]." (Emphasis added.) Accordingly, the income earned by an injured person for work performed during a thirty-day work-loss benefits period must be deducted from the statutory maximum before benefits are paid. In the present case, plaintiff, since April 6, 1985, worked in a less

[1] The $1,000 maximum originally stated in the statute was applicable from March 30, 1973, which was the effective date of the statute, through September 30, 1974. Annual adjustments to the maximum, as required by the statute itself, have been made. One of those adjustments provided that the work-loss maximum would be set at $2,252 per month for accidents occurring between October 1, 1983, and September 30, 1984. Since plaintiff's accident occurred on June 20, 1984, the applicable work-loss maximum in his case is $2,252.

[2] Plaintiff's average weekly wage as a truck driver was $762.13. This amount multiplied by 13 and divided by 3 equals $3,302.56.

strenuous and lower-paying position than that of his preinjury employment, earning $1,157 per month.[3] Thus, the amount of plaintiff's work-loss benefits payable after April 6, 1985, as calculated under § 3107(b), would be $1,095 per month: $2,252 (the monthly statutory maximum) minus $1,157 (the monthly income earned by plaintiff).

In making this calculation, we follow statutory dictates by deducting the amount of plaintiff's wages from the applicable statutory maximum of $2,252 and not from plaintiff's actual work loss of $3,302.56 per month. The circuit court deducted the wages earned in the less strenuous job from plaintiff's actual work loss, observing that plaintiff's wages were earned from "favored work" and that the treatment of wages from such work is "not addressed in the existing case law insofar as no-fault benefits are concerned." The circuit court reasoned that "it does not make sense to subtract favored work income from the statutory maximum since this would also effectively punish [discourage?] an injured person from working." We believe, however, that the language of § 3107(b) is plain and unambiguous in requiring, without qualification, "income earned by an injured person" to be deducted from the statutory maximum payable as no-fault work-loss benefits during a single thirty-day period. We are bound to uphold this plain meaning. *City of Saugatuck v Saugatuck Twp*, 157 Mich App 52, 56; 403 NW2d 100 (1987), lv den 428 Mich 905 (1987); *Grier v DAIIE*, 160 Mich App 687, 690; 408 NW2d 429 (1987). Moreover, this Court has previously stated that "it appears that the Legislature intended that the statutory maximum [of § 3107(b)] be a ceiling from which deductions are to be made, and not a maxi-

---

[3] Plaintiff's weekly wage in this favored-work position was $267 per week. This amount multiplied by 13 and divided by 3 equals $1,157.

mum to be used when considering the difference between a claimant's actual work loss minus deductions and the statutory limit." *Featherly v AAA Ins Co,* 119 Mich App 132, 137; 326 NW2d 390 (1982).[4]

Plaintiff's adjusted thirty-day work-loss benefits of $1,095 must further be reduced by the amount of monthly workers' compensation benefits he received. Section 3109(1) of the no-fault act provides:

> Benefits provided or required to be provided under the laws of any state or the federal government shall be subtracted from the personal protection insurance benefits otherwise payable for the injury.

In *Mathis v Interstate Motor Freight System,* 408 Mich 164, 187; 289 NW2d 708 (1980), the Supreme Court held that workers' compensation benefits fall within the scope of § 3109(1) and must, therefore, be set off from no-fault benefits otherwise payable. In *Featherly, supra,* p 137, this Court clarified that "when reference is made to 'benefits otherwise payable' in § 3109(1) the Courts and Legislature are referring to any benefits payable up to the maximum statutory limitations." Thus, in the present case, to determine the appropriate amount of benefits due to plaintiff from defendant, we must subtract the amount of workers' compensation benefits received monthly by plaintiff after April 6, 1985, from the amount of benefits payable to plaintiff under § 3107(b), which, as already determined, is $1,095 per month.

Plaintiff asserts that he received $1,008.37 monthly in workers' compensation benefits,

---

[4] In *Featherly,* this Court reversed a trial court and held that workers' compensation benefits received by an insured in the wake of an automobile accident had to be set off, as provided in § 3109(1) of the no-fault act, from the statutory maximum under § 3107(b) rather than from the insured's actual wage loss.

whereas defendant asserts that plaintiff received $1,115.84 monthly.[5] Using plaintiff's figures, we find that the amount of benefits due to plaintiff equals $86.63 per month: $2,252 (the monthly statutory maximum) minus $1,157 (the monthly income earned by plaintiff) minus $1,008.37 (the monthly workers' compensation benefits received by plaintiff). On the other hand, using defendant's figures, we find that the amount of benefits due to plaintiff equals zero (or, actually, negative $20.84): $2,252 minus $1,157 minus $1,115.84. The question whether plaintiff's or defendant's figures are correct regarding the amount of workers' compensation benefits received monthly by plaintiff requires a factual finding.[6] Accordingly, we remand the case in order to permit that finding to be made and, thereafter, for the entry of an appropriate judgment regarding plaintiff's entitlement, if at all, to payment of no-fault work-loss benefits.

The circuit court's grant of summary disposition in favor of plaintiff is reversed and the case is remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

---

[5] Neither party explains on appeal this discrepancy in the amount of monthly workers' compensation benefits paid to plaintiff. In defendant's brief opposing plaintiff's motion for summary disposition filed in the lower court, however, defendant mentioned that plaintiff's weekly workers' compensation benefits, although payable at $257.70, were reduced by $25 to $232.70 per week in order to permit defendant to recoup certain overpayments previously made.

[6] In its January 30, 1987, opinion, the Muskegon Circuit Court apparently accepted, without explanation, defendant's figure of $1,115.84 regarding the amount of workers' compensation benefits received monthly by plaintiff. Thus, it determined that plaintiff was entitled to $1,136.16 in monthly work-loss benefits by subtracting $1,115.84 from the monthly statutory maximum of $2,252, and by failing to further subtract the amount of monthly wages earned by plaintiff in his postinjury position.