# STATE OF MICHIGAN

# COURT OF APPEALS

JOHN AGNONE,

        Plaintiff-Appellee,

v

HOME-OWNERS INSURANCE COMPANY,

        Defendant-Appellant.

FOR PUBLICATION
May 19, 2015
9:20 a.m.

No. 320196
Wayne Circuit Court
LC No. 12-010295-NF

Before: WILDER, P.J., and OWENS and M. J. KELLY, JJ.

PER CURIAM.

In this dispute over first-party benefits under Michigan's no-fault act, defendant, Home-Owners Insurance Company, appeals by leave granted the trial court's order denying its motion for partial summary disposition under MCR 2.116(C)(10). On appeal, Home-Owners argues the trial court erred when it determined that plaintiff, John Agnone, was entitled to work-loss benefits under the no-fault act even though the undisputed evidence showed that his income after the accident exceeded the statutory maximum. We conclude the trial court erred when it determined that the statutory maximum applied to the difference between Agnone's income before the accident and his income after the accident. With MCL 500.3107(1)(b), the Legislature provided that the maximum applies to the loss of income incurred in a single 30-day period plus the income that the injured person earned in that same period. Because the undisputed evidence showed that Agnone earned more than the applicable maximum, he was not entitled to any work-loss benefit under MCL 500.3107(1)(b), and the trial court should have granted Home-Owner's motion. Accordingly, we reverse and remand for entry of an order granting Home-Owners motion for partial summary disposition.

## I. BASIC FACTS

Agnone testified at his deposition that he and his wife went out to purchase a Christmas tree in December 2009. On their way home, he stopped before merging onto another road and another driver drove into the rear of Agnone's car. Referring to a previous accident that he had in 2005, Agnone said he immediately knew that his neck and back had been hurt again.

Agnone owns and operates his own insurance agency. Prior to the 2009 accident, Agnone earned between $183,000 and $200,000 per year in gross income, which amounted to an

average of more than $196,000 per year in gross income. Agnone admitted that his income increased to more than $222,000 in 2010, but explained that the increase arose from work he performed prior to the accident. Although he continued to work after the accident, Agnone said he was no longer able "to put forth the effort to continue to go to the extra appointment." As a result of the reduced client contact, he was unable to generate as many sales and suffered a wage loss in the following years. His gross income dropped to around $140,000 in 2011, and to around $135,000 in 2012.

In January 2012, Agnone sued Home-Owners for breach of the motor vehicle insurance policy that it issued to him.[1] Agnone alleged that Home-Owners breached the agreement by refusing to pay certain personal protection insurance benefits. He later asserted that Home-Owners should pay him a work-loss benefit equal to the difference between his average annual income in the preceding years and his actual annual income in the years after the accident. He claimed approximately $48,000 in lost income for 2011 and approximately $52,000 in lost income for 2012.

In October 2013, Home-Owners moved for partial summary disposition under MCR 2.116(C)(10). Home-Owners presented evidence that Agnone made substantially more than the $4,878 per month limit provided under MCL 500.3107(1)(b). Because his actual income exceeded the limit, Home-Owners further maintained, Agnone's lost income was not compensable under the policy. Home-Owners asked the trial court to dismiss Agnone's claim to the extent that it included a request for wage-loss benefits.

In response, Agnone argued that the limit stated under MCL 500.3107(1)(b) applied to the difference between the income that he would have earned and his actual income. Because his wage-loss for each of the 30-day periods at issue was less than the applicable maximum of $4,878, he argued Home-Owners was responsible for all his lost income.

The trial court agreed with Agnone's interpretation of the limit on work-loss benefits and denied Home-Owners' motion for partial summary disposition.

After the trial court denied Home-Owners' motion for reconsideration, it applied for leave to appeal in this Court. This Court granted leave to appeal in March 2014.[2]

## II. SUMMARY DISPOSITION

## A. STANDARDS OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775

---

[1] Agnone originally sued in district court, but the district court transferred it to circuit court.

[2] See *Agnone v Home-Owners Insurance Co*, unpublished order of the Court of Appeals, entered March 21, 2014 (Docket No. 320196).

NW2d 618 (2009). This Court also reviews de novo the proper interpretation of the no-fault act. *In re Carroll (On Remand)*, 300 Mich App 152, 159; 832 NW2d 276 (2013).

## B. WORK-LOSS BENEFIT

Because he was injured in a motor vehicle accident, Agnone was entitled to a variety of personal protection insurance benefits—commonly called PIP benefits—from his no-fault insurer, which in this case was Home-Owners. *Id.* "The statutory PIP benefits include 'four general categories of expenses and losses: survivor's loss, allowable expenses, work loss, and replacement services.' " *Id.*, quoting *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012). In its motion for partial summary disposition, Home-Owners challenged Agnone's right to recover work-loss benefits.

A no-fault insurer must pay an injured insured for work loss "consisting of loss of income from work [the] injured person would have performed during the first 3 years after the date of the accident if he or she had not been injured." MCL 500.3107(1)(b). This provision was intended to compensate "the injured person for income he would have received but for the accident." *MacDonald v State Farm Mutual Insurance Co*, 419 Mich 146, 152; 350 NW2d 233 (1984); see also *Popma v Auto Club Ins Ass'n*, 446 Mich 460, 472; 521 NW2d 831 (1994) ("Work-loss benefits are meant primarily to provide claimants with simple income insurance and are intended to compensate claimants approximately dollar for dollar for the amount of wages lost because of the injury or disability."). Although the Legislature required no-fault insurers to compensate injured persons for their work loss occasioned by a motor vehicle accident, it also limited the extent of work loss that the no-fault insurer might be obligated to pay: "the benefits payable for work loss sustained in a single 30-day period and the income earned by an injured person for work during the same period together shall not exceed [$4,878],[3] which maximum shall apply pro rata to any lesser period of work loss." MCL 500.3107(1)(b). At issue on appeal is whether the insurer must pay work loss equal to the difference between the income that the injured person would have earned from work and his or her actual income from work during the same period, but not more than the statutory maximum, or whether the insurer is obligated to pay the work-loss benefit, but only to the extent that the injured person's income from work after the accident plus his or her work-loss benefit does not exceed the statutory maximum.

MCL 500.3107(1)(b) provides a benefit for the "loss of income from work an injured person would have performed . . . if he or she had not been injured" without reference to the injured person's income from work that he or she performs after the accident.[4] The Legislature first mentioned the injured person's income from work that he or she performs after the accident in the provision limiting the work-loss benefit: "the benefits payable for work loss sustained in a

---

[3] The maximum work-loss benefit is adjusted annually to reflect changes in the cost of living. See MCL 500.3107(1)(b); Mich Admin Code, R 500.811. The parties agree that the applicable amount on the date of the accident at issue was $4,878 per month.

[4] The Legislature provided that the work-loss benefit must normally be reduced by 15% to correct for the fact that work-loss benefits are not taxed. See MCL 500.3107(1)(b).

single 30-day period *and* the income earned by an injured person for work during the same period *together* shall not exceed" the applicable maximum. MCL 500.3107(1)(b) (emphases added). By stating that the "benefits payable" and "the income earned" for the same period "together" shall not exceed the maximum, the Legislature unambiguously provided that a no-fault insurer was obligated to compensate the injured person for the loss of income for work that he or she would have performed were it not for the accident, but only to the extent that the work-loss benefit, when added to the injured person's income from work performed after the accident during the same period, does not exceed the statutory maximum. Stated another way, if the income from work that the injured person would have performed plus the income from work that he or she actually earned during the same period exceeds the statutory maximum, the work-loss benefit must be reduced until the benefit plus the income earned is equal to the maximum. If the income that the injured person actually earns for work performed during the relevant period exceeds the statutory maximum, as is the situation in this case, the work-loss benefit is reduced to zero because the "benefits payable for work loss . . . *and* the income earned . . . for work during the same period *together*" cannot exceed the applicable maximum. MCL 500.3107(1)(b) (emphases added); this is so even though the injured person is able to show that he or she has suffered a loss of income from work that he or she would have performed but for the accident. When the limitation on the work-loss benefit is analyzed in its proper context, it is evident that the Legislature intended to allow a dollar-for-dollar work-loss benefit up to a specified income level—not up to a specified income loss—and this Court must enforce the Legislature's decision to limit the benefit in this way. See *Pohutski v City of Allen Park*, 465 Mich 675, 683; 641 NW2d 219 (2002).

The undisputed evidence showed that Agnone earns more income from work after his accident than the statutory maximum applicable to the work-loss benefit. Accordingly, he is not entitled to any work-loss benefit and the trial court should have granted Home-Owners' motion for partial summary disposition on that basis. Moreover, contrary to Agnone's contention on appeal, this construction is consistent with this Court's historical application of the statutory limit.

This Court addressed the proper construction of this same statutory limitation in *Snellenberger v Celina Mut Ins Co*, 167 Mich App 83; 421 NW2d 579 (1988).[5] In that case, Lewis Snellenberger's employer moved him to a job with lighter duties after he was injured in a motor vehicle accident. *Id.* at 84. The new job paid significantly less than the job Snellenberger performed before he was injured. *Id.* When his insurer, Celina Mutual Insurance Company, stopped paying work-loss benefits, Snellenberger sued Celina Mutual. *Id.* The trial court thereafter entered a judgment in favor of Snellenberger and Celina Mutual appealed in this Court. *Id.* at 84-85. Celina Mutual argued on appeal that the trial court erred when it failed to deduct the monthly wages that Snellenberger earned in "his postinjury job and the monthly workers' compensation benefits he received" from the maximum applicable to the work-loss benefit. *Id.* at 85.

---

[5] At the time, the work-loss benefit was codified at MCL 500.3107(b). The Legislature inserted the subsection numbering in 1991. See 1991 PA 191.

In examining the issue, this Court stated that Snellenberger would normally be "entitled to receive the loss of income from work he would have performed . . . minus fifteen percent." *Id.* at 86. That benefit, the Court recognized, was nevertheless subject to a statutory limit: "His work-loss benefits during any thirty-day period, however, when added to income earned during that same period, cannot exceed $2,252."[6] *Id.* To calculate the proper work-loss benefit, this Court first determined the total monthly income that Snellenberger earned at the time of his injury—and would presumably have continued to earn had he not been injured—and adjusted it downward by the required fifteen percent to arrive at a figure of $2,807.18. *Id.* It then compared Snellenberger's adjusted monthly income from before the accident, $2,807.18, to the maximum work-loss benefit applicable at the time, which was $2,252. *Id.* Because Snellenberger's monthly income prior to the accident was higher than the statutory maximum, the Court concluded that it must use the lower amount as the starting point for calculating the work-loss benefit. *Id.*

Then, in order to give effect to the limit that the Legislature provided for work-loss benefits, the Court stated, it had to reduce the applicable maximum by the amount of income from work that Snellenberger performed after his accident:

> Section 3107(b) specifies that '[t]he benefits payable for work loss sustained in a single 30-day period *and* the income earned by an injured person for work during the same period *together* shall not exceed [$2,252].' (Emphasis added.) Accordingly, the income earned by an injured person for work performed during a thirty-day work-loss benefits period must be deducted from the statutory maximum before benefits are paid. In the present case, [Snellenberger], since April 6, 1985, worked in a less strenuous and lower-paying position than that of his pre-injury employment, earning $1,157 per month. Thus, the amount of [his] work-loss benefits payable after April 6, 1985, as calculated under [MCL 500.3107(1)(b)], would be $1,095 per month: $2,252 (the monthly statutory maximum) minus $1,157 (the monthly income earned by [Snellenberger]).

> In making this calculation, we follow statutory dictates by deducting the amount of [Snellenberger's] wages from the applicable statutory maximum of $2,252 and not from [his] actual work loss of $3,302.56 per month. [*Id*. at 86-87.]

Agnone argued before the trial court, and the trial court agreed, that the decision in *Snellenberger* supported his claim because the Court in that case awarded Snellenberger a work-loss benefit on the basis of a wage differential. That is, he argues that *Snellenberger* stands for the proposition that an injured person is entitled to a work-loss benefit equal to *all* of the injured person's lost income, as long as the monthly total does not exceed the statutory maximum. But that is not how the Court in *Snellenberger* actually applied the law. The difference between Snellenberger's unadjusted income before the accident ($3,302.56) and his income after the accident ($1,157) was $2,145.56, which amount was less than the applicable maximum for work-

---

[6] The Court used $2,252 because that was the then applicable statutory maximum. See *Snellenberger,* 167 Mich App at 86 n 1.

loss benefit ($2,252). See *id.* As such, had the Court used a true wage differential, it would have awarded Snellenberger the full $2,252, which it did not do. The Court in *Snellenberger* obviously did not apply the maximum to the differential between the income that Snellenberger would have earned from work, but for the accident, and his actual income. Instead, the Court devised a formula for calculating the work-loss benefit in a manner that gave effect to the Legislature's explicit requirement that the work-loss benefit plus the injured person's actual income in the same 30-day period not exceed the statutory maximum. It started by deriving a base wage-loss benefit equal to the lesser of the applicable statutory maximum or the injured person's *total* monthly income from the work that he or she *used* to perform before the accident. It then subtracted from the base wage-loss benefit the injured person's actual income from work performed in the same 30-day period to derive the compensable work-loss benefit.[7] See *id.*

Using the method applied in *Snellenberger* to calculate Agnone's work-loss benefit, we arrive at the same result. In the years before the 2009 accident, Agnone made substantially more each month than the applicable statutory maximum of $4,878. Therefore, under the formulation from *Snellenberger*, we would use the statutory maximum as his base potential benefit. *Id.* at 86. We would then subtract from that base wage-loss benefit the income that he earned in the same 30-day period to derive his compensable work-loss benefit for that period. *Id.* at 86-87. Because he continues to make more than $4,878 in every 30-day period even after his injury, his work-loss benefit is zero.

Although reasonable people might disagree about the wisdom of providing a work-loss benefit up to a specified income level, as opposed to a work-loss benefit up to a specified amount of lost income, it is for the Legislature to balance the costs and benefits of the available options. And, as Michigan Courts have recognized, the Legislature has determined that the balance favors limiting the benefit to work losses below a specified income level. See *Marquis v Hartford Accident & Indemnity (After Remand)*, 444 Mich 638, 654-655; 513 NW2d 799 (1994) (noting that the limit stated in MCL 500.3107(1)(b) applies to the total of the work-loss benefit and income earned, and concluding that this statutory language implicitly recognizes that injured workers should mitigate their work losses by returning to work); *Bak v Citizens Insurance Co of America*, 199 Mich App 730, 733; 503 NW2d 94 (1993) (opinion by CORRIGAN, J.) ("When a work-loss plaintiff *has* earned income from another job, no-fault benefits are correspondingly reduced."); *Snellenberger*, 167 Mich App at 86-87; *Argenta v Shahan*, 135 Mich App 477, 485; 354 NW2d 796 (1984) (noting that the work-loss benefit is subject to an "adjustable, monthly cap on the sum of benefits paid and the allowable income earned by an injured person for work during the same period" and stating that the plaintiff in its case had "no hope of obtaining work-loss benefits form his own carrier" because he continued to make "well in excess" of the monthly cap even after his injury), reversed on other grounds in *Ouellette v Kenealy*, 424 Mich 83; 378 NW2d 470 (1985); *Featherly v AAA Ins Co*, 119 Mich App 132, 137; 326 NW2d 390 (1982) ("[T]he Legislature intended that the statutory maximum be a ceiling from which deductions are

---

[7] The Court in *Snellenberger* also stated that the benefit had to be adjusted by subtracting other benefits, such as workers' compensation, from the work-loss benefit. *Snellenberger*, 167 Mich App at 88-89.

to be made, and not a maximum to be used when considering the difference between a claimant's actual work loss minus deductions and the statutory limit."). Notably, while the Legislature has determined that high income earners are not entitled to a work-loss benefit in excess of the adjusted minimum income level, the Legislature has not left injured persons with high income without a remedy for their work losses beyond the statutory maximum; those persons may sue an at-fault driver to recover their work losses in excess of the limits provided by MCL 500.3107(1)(b). See MCL 500.3135(3)(c); *Hannay v Dep't of Trans*, 497 Mich 45, 76; 860 NW2d 67 (2014); *Ouellette*, 424 Mich at 85-86. Consequently, Agnone may be able to recover his work losses, just not as a PIP benefit.

## III. CONCLUSION

The trial court erred when it construed MCL 500.3107(1)(b) as a limit on the total amount of work-loss that is compensable, rather than as a limit on the combined work-loss benefit and income earned in the same period as the work-loss benefit. Because Agnone continues to earn more than the applicable statutory maximum, the trial court should have determined that he was not entitled to any work-loss benefit under MCL 500.3107(1)(b) and should have granted Home-Owners' motion for partial summary disposition on that basis.[8]

Reversed and remanded for entry of an order granting Home-Owners' motion for partial summary disposition. We do not retain jurisdiction. As the prevailing party, Home-Owners may tax its costs. MCR 7.219(A).

/s/ Kurtis T. Wilder
/s/ Donald S. Owens
/s/ Michael J. Kelly

---

[8] Given our resolution of this issue, we need not address Home-Owners' remaining claim of error.