*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARINA SOLIMAN,

   Plaintiff-Appellee,

and

MICHIGAN AMBULATORY SURGICAL
CENTER, LLC,

   Intervening Plaintiff,

v

HUNG QUOC DINH and LOC NGUYEN,

   Defendants,

and

HOME-OWNERS INSURANCE COMPANY,

   Defendant-Appellant.

UNPUBLISHED
April 30, 2020

No. 344978
Macomb Circuit Court
LC No. 2016-002248-NI

Before: M. J. KELLY, P.J., and K. F. KELLY and SERVITTO, JJ.

K. F. KELLY, J. (*dissenting*).

   I respectfully dissent. Because I conclude that the trial court improperly denied defendant Home-Owners Insurance Company the right to challenge the reasonableness of the fees through cross-examination and improperly allowed plaintiff to recover medical bills that were assigned to a medical provider, I would reverse the jury verdict, vacate the award of $24,050 for fees charged by Spine Specialists of Michigan, P.C. in light of the assignment, and remand for a new trial.

## I. BASIC FACTS AND PROCEDURAL HISTORY

In March 2015, plaintiff worked as a physical therapy technician three days a week and attended Macomb Community College two days a week. Plaintiff was stopped at a red light at the intersection of 12 Mile and Dequindre Roads in her 2002 Volvo. She was waiting to turn left when her vehicle was rear-ended by a vehicle driven by defendant Hung Quoc Dinh (Dinh). They pulled into a local gas station and exchanged information, and the Madison Heights police were called to the scene. However, the police indicated that the accident occurred in the city of Warren, and Warren police officers would not respond to the scene because no one was injured. Plaintiff was driving to the Warren police station with Dinh following behind her when he drove off. Plaintiff decided to proceed home. After making multiple attempts to contact Dinh, plaintiff eventually went to the Warren police department and filed a report, and the officer recorded the lowest level of injury to plaintiff and damage to the vehicle. Although plaintiff initially felt "okay," five days after the accident, plaintiff reported to a local emergency room for treatment. She experienced pain in her neck, shoulder, and back. She was given medications, told to rest, and instructed to follow up with her primary care physician.

Plaintiff obtained treatment from her primary care physician, Dr. Nancy Mansour-Habib, a physical therapist and plaintiff's employer, Dr. Samir Hanna, and a physical medicine and rehabilitation doctor, Dr. Ghada Hanna. Plaintiff was also referred to Dr. Louis Radden, who was affiliated with Spine Specialists of Michigan, P.C. (Spine Specialists). He ordered an MRI, and the report indicated that plaintiff suffered tears in her shoulder. Dr. Radden referred her to Dr. Michael Bagley for shoulder surgery. Dr. Bagley primarily practiced in Arizona, but performed surgery in Michigan a few days a month at a surgical center. Dr. Bagley's surgical findings did not comport with the injuries identified in the MRI report. However, he located a tear in a different location and repaired it.

Although defendant initially paid the claim, defendant's successor claims adjustor Chuck Bloomfield questioned the causation between plaintiff's injuries and the auto accident. Plaintiff's medical treatment records revealed that in 2011, she complained of neck pain and headaches for which she was prescribed physical therapy and other treatments; the same treatments she received after the auto accident. Additionally, plaintiff reported and received wage loss pay at a rate of $8.50 an hour for 40-hours a week, but her employer disclosed that she earned $8.15 an hour and worked 21-hours a week. Bloomfield also questioned the severity of the injuries and the necessity of the treatments in light of the different speeds attributed to Dinh's vehicle and the limited damage sustained by plaintiff's vehicle. Further, there was concern about the severity of injuries alleged in MRI reports in light of the actual injuries treated by physicians. Although an inquiry was sent on behalf of defendant to plaintiff's physicians questioning the conclusion that the accident caused her injuries, a response was not received. Bloomfield also noted that a complaint by the state had been filed against Dr. Radden questioning the adequacy of his record keeping and the necessity of his injections. Apparently, Dr. Radden entered into a consent judgment pertaining to the record keeping. Finally, defendant's independent medical examiners (IME), Dr. Robert Travis and Dr. Roth, questioned causation and excessive treatment and recommended termination of benefits. Thus, defendant challenged the causation between the auto accident and plaintiff's injuries, the reasonableness of the medical services, and the reasonableness of the charged fees.

At trial, plaintiff sought to recover allowable medical expenses and wage losses. The depositions of the medical providers and IMEs were presented at trial. Plaintiff's medical providers essentially testified that their services were warranted and their fees were reasonable.

The live witnesses consisted of plaintiff, Bloomfield, and the Warren police officer that prepared the police report. Finally, Karen Gilbert, a "biller" at the Michigan Head and Spine Institute, which includes Premier MRI, testified regarding the reasonableness of Premier MRI's charges for its MRIs. Both Gilbert and Bloomfield testified that, for licensing purposes, Premier MRI was required to file a certificate of need with the state that delineated the cost of the MRI, including the equipment and radiologist review, and the charge for the MRI. The certificate of need identified the total cost of the MRI at $449, and identified the charge of the MRI at $750. However, defendant was charged over $5300 for the MRIs.

During trial, defense counsel objected to plaintiff's request for $24,050 in medical expenses owed to Spine Specialists in light of an October 2, 2017 assignment of plaintiff's claim to that entity. Further, defense counsel objected to the admission of the medical bills without the presentation of the billers for cross-examination. For example, defendant asserted that a bill from IWP, an online pharmacy, charged $300 for ibuprofen and $1,000 for a topical cream. In response, plaintiff alleged that caselaw held that a medical provider need only testify to the reasonableness of the services and the fees and the issue presented a question for the jury. Therefore, "the plaintiff can put people on but if they don't, it doesn't matter." Ultimately, the trial court concluded that the medical provider testimony regarding the services rendered and the referrals made were sufficient to present the issue to the jury of the reasonableness of the fees. The trial court held in abeyance any decision regarding the issue of plaintiff's claim for medical bills assigned to the provider. The jury awarded the costs requested except reduced the fee for the MRIs, the only instance where a medical biller was questioned about the fees. After the jury rendered its verdict, the trial court denied the request for directed verdict of the fee awarded to plaintiff for services provided by Spine Specialists despite the assignment.

## II. EVIDENCE OF REASONABLENESS

Defendant contends that the trial court erred by admitting the evidence of the medical bills[1] without affording it the opportunity to cross-examine the "billers" regarding the reasonableness of the charges. I agree.

During trial but after the majority of plaintiff's proofs were presented, plaintiff sought to admit plaintiff's exhibits 1A through 1J, which consisted of bills from several providers, including American Anesthesia (1A), Beaumont Hospital Systems (1B), Detroit Anesthesia (1C), Grace Medical (1D), IWP (the medication company) (1E), Marian Rehab (1F), Michigan Ambulatory Surgical Center (1G), Michigan Head and Spine Premier MRIs (1H), Oakland Physical Therapy and Ghada Hanna, M.D. (1I), and Spine Specialists (1J). Defendant objected to all of them,

---

[1] I note that defendant also challenged the medical bills as inadmissible hearsay pursuant to "MRE 801, MRE 802." The medical providers testified regarding the services provided and ordered, the referrals made, the standard rate charged, the history of past billings, and the amounts paid by others. Defendant does not address the specific testimony elicited at trial and MRE 803(6). It is not enough for an appellant to announce a position or claim error and expect this Court to elaborate on the arguments and search for authority to sustain or reject the position. *Cadle Co v City of Kentwood*, 285 Mich App 240, 258 n 10; 776 NW2d 145 (2009). Consequently, I limit my discussion to the aspect of the issue for which an analysis and authority was submitted.

asserting that admitting bills from providers with no opportunity to cross-examine any witnesses with respect to the reasonableness of the charges in those bills, which was an element plaintiff had the burden of proving, was improper. In response, plaintiff relied on *Kallabat v State Farm Mut Auto Ins Co*, 256 Mich App 146; 662 NW2d 97 (2003), claiming that the reasonableness of a charge requires no testimony and is simply a question for the jury to resolve. In reply, defendant asserted that *Kallabat* was a 2003 case, that it had not yet "had a chance to review any updated case law," and that the statute clearly indicated that plaintiff had the burden to prove a charge's reasonableness. After the trial court commented that "[*Kallabat* is] still good law" and that it "didn't find any" "negative treatments" during a "cursory review," the court asked plaintiff's counsel "to go through the bills and explain . . . what reasonable and permissible inferences could be drawn from them based on the testimony that [they] did have, because some of the physicians did testify, some of the providers did testify they believed that their care was necessary and the prices were reasonable." Plaintiff generally asserted that all of the services provided "were all prescribed by the family doctor and the other doctors who said, yeah, that was reasonable in their treatment so I think they all come in under that." Recalling that "[t]he medical testimony thus far from each one of the individuals who appeared on the video deposition . . . is that they all said that the care and treatment they rendered were necessary, it was reasonable, the expenses were reasonable, and the bills that . . . plaintiff is presenting flow from those charges," the court decided "to admit Exhibits 1A through J on behalf of the plaintiff." Afterwards, defendant's counsel noted that "there wasn't any testimony that the surgical center expenses were reasonable, nor the anesthesia charges, nor the IWP prescriptions, nobody saw her for those." But the trial court responded that, "based on *Kallabat*, the fact that somebody prescribed it, some provided surgery, and you needed anesthesia, those are reasonable and permissible inferences from that." Defense counsel responded that the court's decision "doesn't deal with the preclusion of my opportunity to examine the witnesses or determine whether or not there are assignments on these claims" and that it would be impossible to "know unless [defendant was] able to ask somebody . . . on the stand" because plaintiff "never produced any of the witnesses . . . ." Nevertheless, the trial court admitted the medical bills in full as requested.

As a result of the trial court's decision, the jury was presented with the bills set forth in the majority opinion.

The jury awarded plaintiff the claimed expenses as requested except it reduced the charges sought by Michigan Head and Spine and Premier MRI's charges from $16,410.00 to $2,250.00. Thus, the only bill reduced by the jury applied to the MRIs for which Gilbert and Bloomfield testified that the actual cost was only $449, the entity represented that it would charge $750, but over $5300 was the charge to defendant. On appeal, defendant contends that the trial court improperly denied it the right to cross-examine the "billers" from the other medical providers. In light of the trial court's broad interpretation of the *Kallabat* decision, I agree. There is a distinct and crucial difference between what is reasonably *prescribed* and what is reasonably *charged*.

"When an evidentiary issue is preserved, a 'trial court's decision whether to admit evidence is reviewed for an abuse of discretion, but preliminary legal determinations of admissibility are reviewed de novo.'" *Nahshal v Fremont Ins Co*, 324 Mich App 696, 710; 922 NW2d 662 (2018), quoting *Albro v Drayer*, 303 Mich App 758, 760; 846 NW2d 70 (2014). A court necessarily abuses its discretion when it admits evidence that is inadmissible as a matter of law. *Craig v Oakwood Hosp*, 471 Mich 67, 76; 684 NW2d 296 (2004). The proponent of evidence must establish

-4-

relevance and admissibility. *Gilbert v DaimlerChrysler Group*, 470 Mich 749, 781; 685 NW2d 391 (2004). Evidence may be elicited on cross-examination to discredit a witness, and the scope and duration of cross-examination is in the trial court's discretion. *Wischmeyer v Schanz*, 449 Mich 469, 474-475; 536 NW2d 760 (1995). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 274; 884 NW2d 257 (2016). Michigan's appellate courts also review a trial court's interpretation and application of the no-fault act de novo. *Agnone v Home-Owners Ins Co*, 310 Mich App 522, 526; 871 NW2d 732 (2015).

"[U]nder the no-fault act, a medical provider will only be paid for reasonable and necessary charges actually incurred." *Auto-Owners Ins Co v Compass Healthcare PLC*, 326 Mich App 595, 609; 928 NW2d 726 (2018), citing *Advocacy Org for Patients & Providers v Auto Club Ins Ass'n*, 257 Mich App 365, 374; 670 NW2d 569 (2003), aff'd 472 Mich 91 (2005). The no-fault act requires that insurers only pay on behalf of insureds "reasonable" charges for particular products and services. *Douglas v Allstate Ins Co*, 492 Mich 241, 274-277; 821 NW2d 472 (2012). Indeed, the no-fault act also requires that insurers "challenge the reasonableness of a medical provider's charges and that medical providers should expect no less." *Auto-Owners Ins Co*, 326 Mich App at 609-610, citing *Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431, 448; 814 NW2d 670 (2012). Although the no-fault act does not define what a "reasonable" charge is, it is clear that the term is not synonymous with a "customary fee a particular provider charges"; rather, "the customary fee is simply the cap on what health-care providers can charge, and is not, automatically, a reasonable charge requiring full reimbursement . . . ." *Id*. at 610 (citations and internal quotation marks omitted).

The burden to establish a charge's reasonableness by a preponderance of the evidence falls on insureds and providers, not insurers. *Auto Owners Ins Co*, 326 Mich App at 610. " 'Where a plaintiff is unable to show that a particular, reasonable expense has been incurred for a reasonably necessary product and service, there can be no finding of a breach of the insurer's duty to pay that expense, and thus no finding of liability with regard to that expense.' " *Kallabat*, 256 Mich App at 151, quoting *Nasser v Auto Club Ins Ass'n*, 435 Mich 33, 50; 457 NW2d 637 (1990). "In determining damages for allowable expenses, the jury must not be allowed to speculate concerning the cost of a particular procedure or service, and a trial court should grant a motion for judgment notwithstanding the verdict if the jury was permitted to engage in such speculation." *Id*.

The trial court relied on the *Kallabat* decision to conclude that the primary care physician's referral to other medical providers led to the reasonable inference that all services were reasonable. However, a conclusion that a service is reasonable and necessary does not equate with a reasonable charge for a service. In *Kallabat*, the plaintiff was injured in an automobile accident, and he was a named insured on the policy issued by the defendant. The plaintiff suffered a shoulder injury and a fractured foot, and he treated with three physicians for his injuries. Drs. Hubers and Roodbeen were partners and treated the shoulder and foot injuries. The plaintiff sought treatment from Dr. Robertson for his neck and spinal injuries. However, Dr. Robertson also evaluated the complaints of pain raised before Drs. Hubers and Roodbeen, and the course of treatment by all three doctors overlapped. *Kallabat*, 256 Mich App at 147-149. At the trial for the plaintiff's claim for first-party no-fault insurance benefits, all three doctors testified, but only Dr. Robertson expressly testified that his services were reasonably necessary and that his fees were reasonable. Consequently, defendant moved for partial directed verdict and judgment notwithstanding the

verdict relying on the lack of reasonable testimony pertaining to services and fees for two of the physicians, but the trial court denied the motion. On appeal, this Court affirmed, and declined to hold that a plaintiff must present direct evidence from every physician addressing reasonableness:

In *Nasser v Auto Club Ins Ass'n*, 435 Mich 33, 50; 457 NW2d 637 (1990), the Court reiterated that whether an expense is "allowable" under MCL 500.3107 depends on whether (1) the charge is reasonable, (2) the expense is reasonably necessary, and (3) the expense is incurred. "[I]t is each particular expense that must be both reasonable and necessary." *Nasser, supra* at 50. "Where a plaintiff is unable to show that a particular, reasonable expense has been incurred for a reasonably necessary product and service, there can be no finding of a breach of the insurer's duty to pay that expense, and thus no finding of liability with regard to that expense." *Id*.

Whether expenses are reasonable and reasonably necessary is generally a question of fact to be resolved by the jury. *Id*. at 55, citing *Nelson v DAIIE*, 137 Mich App 226, 231; 359 NW2d 536 (1984), and *Kondratek v Auto Club Ins Ass'n*, 163 Mich App 634, 637; 414 NW2d 903 (1987). In determining damages for allowable expenses, the jury must not be allowed to speculate concerning the cost of a particular procedure or service, and a trial court should grant a motion for judgment notwithstanding the verdict if the jury was permitted to engage in such speculation. *Attard v Citizens Ins Co of America*, 237 Mich App 311, 321-322; 602 NW2d 633 (1999).

At its core, defendant's claim is that a plaintiff in an action under MCL 500.3107 must offer direct evidence from the treating physician that the expenses incurred were both reasonable and reasonably necessary in order for the plaintiff to prevail. We find no such requirement within the language of the statute, and we cannot find, and defendant does not cite, any binding precedent in this regard. Rather, as with any civil case, the jury is entitled to consider all the evidence introduced by the plaintiff to decide whether the plaintiff has proved by a preponderance of the evidence that the expenses were reasonable and necessary. M Civ JI 3.09. Thus, direct and circumstantial evidence, and permissible inferences therefrom, may be considered by the jury to determine whether there is sufficient proof that the expenses were both reasonable and necessary. See, e.g., *Mull v Equitable Life Assurance Society of the United States*, 196 Mich App 411, 421; 493 NW2d 447 (1992); M Civ JI 3.10.

While plaintiff did not provide direct testimony from two of his doctors that each and every expense was reasonable and necessary, we conclude that plaintiff did provide evidence sufficient in this regard to survive defendant's motion for a directed verdict and motion for judgment notwithstanding the verdict. As stated above, Dr. Robertson testified that the care he rendered was reasonably necessary and related to the automobile accident and that his fees were reasonable. Defendant admits that this evidence was sufficient for the jury to decide whether Dr. Robertson's bills were allowable expenses under the no-fault act. We find that Dr. Robertson's testimony also supports a legitimate inference that Dr. Hubers' and Dr.

Roodbeen's charges and treatment were also reasonable and necessary. Dr. Robertson's testimony that he, Dr. Hubers, and Dr. Roodbeen each reached the same diagnoses permitted the jury to reasonably infer that Dr. Hubers' and Dr. Roodbeen's treatment was necessary and related to the accident.

Moreover, in this case, plaintiff provided the jury with itemized bills for every expense, unlike the plaintiff in *Attard* who asked the jury to "fill in," if it could, what it believed would be the cost of certain expenses, including a health-club membership. *Attard, supra* at 322. The jury was able to scrutinize each expense during its deliberations and compare Dr. Robertson's bills, which he described as reflecting reasonable charges, to the bills of Dr. Hubers and Dr. Roodbeen to determine whether the expenses reflected therein were also reasonable. On the basis of this evidence, we cannot state that plaintiff failed to sustain his claim as a matter of law. Therefore, the trial court properly denied defendant's motions for a directed verdict and judgment notwithstanding the verdict. [*Kallabat*, 256 Mich App 151-153.]

The *Kallabat* Court concluded that there was sufficient evidence of reasonably necessary services and reasonableness of the fees to submit to the jury for resolution. However, this Court did not hold that a submission of medical bills accompanied by the physician's opinion regarding the reasonable necessity of the services and the reasonableness of the fee charged created an irrebuttable presumption that the insurer could not dispute. Rather, this Court addressed the proofs that were necessary to survive a motion for directed verdict, and there were no limits placed on an insurer's ability to contest those proofs.

In the present case, to support the reasonableness of the charges below, plaintiff relied almost exclusively on her physicians' testimony. For example, Dr. Radden testified that his services were reasonable and necessary, a standard rate was charged, the amount was billed in the past, and the amount was paid by others. However, there was no indication that Dr. Radden was familiar with the wholesale cost of medical items, such as injections, and the cost charged to the insurer. Therefore, defendant sought to cross-examine the billers for the physicians to address the cost of the services compared to the amount billed to the insurance company. Indeed, in the one instance where a biller testified, defendant was able to elicit that the cost of an MRI was $449, and the represented charge was $750. Yet, defendant was billed over $5300 for the MRI. These medical bills contained the sole charges that were reduced by the jury.

Additionally, Bloomfield testified regarding medical providers that participated with networks. The physician became a member of a network and agreed to accept a set fee for specific services through its participation in the network. Bloomfield acknowledged that despite the physician's agreement to accept a fee, nonetheless the billers submitted a request for payment that exceeded the set fee. Consequently, a claims adjuster or an entity retained by the insurer may review the bills submitted and reduce the fee to a particular amount. Thus, defendant was entitled to question why a physician participated with a network and agreed to the network fee, but then the biller sought a higher amount despite the network membership and statutory authority limiting

the fee to reasonableness standards. Further, defendant was unable to cross-examine the pharmacy regarding the wholesale cost of ibuprofen and topical cream in comparison to the charge.[2]

Additionally, the trial court construed the *Kallabat* Court decision as allowing for inferences that a referral by a treating physician was sufficient to establish the reasonableness of a fee charged by any other provider. However, when questioned about plaintiff's placement under sedation for his services, Dr. Radden testified that plaintiff had "a choice to have sedation," and his examination of the file revealed that she had "some sedation" for both cervical epidural procedures. Further, although Dr. Bagley testified that plaintiff received anesthesia during her shoulder surgery, he deferred to the anesthesiologist regarding what was provided during the procedure. In light of this testimony, it is unclear who provided the sedation and whether the anesthesiologist for the shoulder procedure had options regarding the type administered and any differing charge. Thus, the trial court's prohibition of cross-examination of those service providers or their billers by defendant allowed the jury to infer that the referral to the surgeons and their services were reasonable and necessary. It also extended this inference to the treatment and services and *fees* provided by other individuals attendant to the referral physicians' services.

In summary, the physicians testified that their services were reasonable and necessary and that the fees were reasonable. However, the physicians' opinions regarding why the fee was reasonable did not contain an express foundation regarding the cost of medical items, such as injections, and any charge to the insurer. Further, the trial court concluded that a physician's opinion to support the reasonableness of services and fees extended to all services including to referral physicians and individuals that were attendant to the referring physicians, such as anesthesiologists. In my view, the trial court erred by concluding that the *Kallabat* decision supported the conclusion that testimony from a treating physician, that services were reasonable and necessary and fees were reasonable, extended to all other treatment providers and could not be challenged through cross-examination of billers.[3] A trial court's error in the exclusion of evidence is not grounds for setting aside a verdict or ordering a new trial unless refusal to take this action appears to the court to be inconsistent with substantial justice. MCR 2.613(A); *Craig*, 471 Mich at 76. The trial court's interpretation of the *Kallabat* decision and exclusion of cross-examination effectively gave the treating physicians' opinions an irrebuttable presumption of reasonableness. Consequently, I would reverse and remand for a new trial.

---

[2] Although there was physician testimony regarding the prescriptions in conjunction with the services, there was no testimony regarding the reasonableness of the cost of the prescriptions compared to the wholesale cost.

[3] The record seemingly indicates that once the trial court read the *Kallabat* decision, it foreclosed the possibility of calling billing witnesses without addressing the witness lists and if an amendment was necessary. Moreover, I would not fault defense counsel for failing to incur the cost of rebuttal physicians to dispute the charges. The issue is whether the trial court, in its role as gatekeeper of the evidence, erred in its application of law when determining that it would not permit cross-examination on the medical bill charges, and it, nor the appellate court, directs the evidence necessary to prove or rebut a case.

### III. ASSIGNMENT

Defendant's remaining arguments on appeal challenge plaintiff's recovery of $24,050.00 in allowable medical expenses arising out of services provided to plaintiff by Spine Specialists. Specifically, it contends that plaintiff could not recover this amount because she assigned this claim for PIP benefits to Spine Specialists, and it should have been permitted to amend its affirmative defenses to include the assignment. I agree.

"Questions involving the proper interpretation of a contract or the legal effect of a contractual clause are . . . reviewed de novo." *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008). "This case also presents questions regarding the interpretation of the court rules, which are also reviewed de novo." *AFP Specialties, Inc v Vereyken*, 303 Mich App 497, 504; 844 NW2d 470 (2014). Additionally, "[w]hether a party has standing is a question of law subject to review de novo." *Groves v Dep't of Corrections*, 295 Mich App 1, 4; 811 NW2d 563 (2011).

An assignment is a contract. *Weston v Dowty*, 163 Mich App 238, 242; 414 NW2d 165 (1987). "The primary goal of contract interpretation is to honor the parties' intent." *Prentis Family Foundation v Barbara Ann Karmanos Cancer Inst*, 266 Mich App 39, 57; 698 NW2d 900 (2005). Thus, "[w]hen the contract is unambiguous, the parties' intent is gleaned from the actual language used." *Id*. "This Court may not 'read into the contract terms not agreed upon by the parties.'" *VHS Huron Valley Sinai Hosp v Sentinel Ins Co*, 322 Mich App 707, 719; 916 NW2d 218 (2018), quoting *Trimble v Metro Life Ins Co*, 305 Mich 172, 175; 9 NW2d 49 (1943).

An assignment is defined as

> A transfer or setting over of property, or of some right or interest therein, from one person to another, and unless in some way qualified, it is properly the transfer of one's whole interest in an estate, or chattel, or other thing. It is the act by which one person transfers to another, or causes to vest in another, his right of property or interest therein. [*Allardyce v Dart*, 291 Mich 642, 644-645; 289 NW 281 (1939) (quotation marks and citation omitted).]

An assignee stands in the shoes or in the place of, or in the same position as, the assignor. *Crossley v Allstate Ins Co*, 139 Mich App 464, 470; 362 NW2d 760 (1984). Therefore, an assignee generally obtains only the rights possessed by the assignor at the time of the assignment. *Shimans v Stevenson*, 248 Mich 104, 108; 226 NW 838 (1929).

An assignee is not bound by a judgment that his predecessor in interest obtained after the assignment at issue, even though the defendants raised the assignment as a defense, because the assignee was not in privity with the assignor. *Aultman, Miller & Co v Sloan*, 115 Mich 151, 154; 73 NW 123 (1897). A contrary rule would allow an assignor to cut off the rights of the assignee without affording him an opportunity to be heard. *Id*. Indeed, it may constitute a deprivation of property without due process of law to extend privity to bind an assignee by a judgment entered against his or her assignor that occurred after the assignor assigned his or her rights in the property. *Postal Tel Cable Co*, 247 US 464, 476; 38 S Ct 566; 62 L Ed 1215 (1928). In this state rather, for purposes of property law, an assignee is in privity with the assignor only up to the time of the

assignment. See *Howell v Vito's Trucking & Excavating Co*, 386 Mich 37, 43; 191 NW2d 313 (1971).

In the present case, plaintiff acknowledged her signature on the assignment that stated:

> I assign to Spine Specialists [of] Michigan P.C. all no-fault benefits presently due or past due incurred as a result of my automobile accident(s) and relating to the reimbursement of medical billings by Spine Specialist[s] of Michigan, P.C. I assign my right to recover for no-fault interest and attorney fees as it relates to the reimbursement of these medical billings. I am not assigning any future benefits.

> I understand that Spine Specialists of Michigan, P.C. may pursue collection on its own behalf against my insurance company. I grant Spine Specialists of Michigan, P.C. and/or its attorneys permission to receive all personal or medical information including, but not limited to, insurance claim files, insurance policies, and all medical records.

According to the plain language of the assignment, plaintiff unequivocally assigned to Spine Specialists her "right to recover" "all no-fault benefits presently due or past due incurred as a result of" the automobile accident and to obtain reimbursement for the medical billings. The use of the term "may" denotes permissive action while the use of the term "shall" generally denotes mandatory action. *Manuel v Gill*, 481 Mich 637, 647; 753 NW2d 48 (2008). Contrary to the trial court's holding, plaintiff's assignment was not permissive. Rather, she assigned her right to recover no-fault benefits pertaining to the services of Spine Specialists without qualification. Instead, Spine Specialists was granted discretionary action with regard to the assignment because it "may pursue" collection against defendant.

Further, plaintiff's standing to pursue a claim had no bearing on whether she proved, by a preponderance of the evidence, the contractual right to the collection of no-fault benefits for services rendered by Spine Specialists. "It is axiomatic that a party must have standing to bring a lawsuit." *Prentis Family Foundation*, 266 Mich App at 56. Three separate elements may be established to show that a party has standing: (1) "an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," (2) "a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court," and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id*. (citations and internal quotation marks omitted).

Irrespective of plaintiff's standing to pursue a claim against her no-fault insurer for medical expenses, plaintiff failed to prove that she maintained the contractual right to recover for medical services provided by Spine Specialists in light of the assignment. When the issue was raised at trial, there was no indication that plaintiff sought a rescission of the assignment or requested that Spine Specialists enter into a contract to forego its right to pursue an action against her insurer and accept her potential recovery of their medical expenses in her litigation. The standing to file and

-10-

pursue a claim does not equate with the legal right of contractual recovery, particularly where the contract rights were assigned without qualification.

I also agree that the trial court erred in failing to permit amendment of the affirmative defenses to include assignment. "A defense not asserted in the responsive pleading or by motion as provided by these rules is waived, except for the defenses of lack of jurisdiction over the subject matter of the action, and failure to state a claim on which relief can be granted." MCR 2.111(F)(2). However, "[a] party may move to amend [his or her] affirmative defenses to add any that become apparent at any time, and any such motion should be granted as a matter of course so long as doing so would not prejudice the plaintiff." *Southeast Mich Surgical Hosp, LLC v Allstate Ins Co*, 316 Mich App 657, 663; 892 NW2d 434 (2016) (emphasis omitted). "Prejudice sufficient to justify denial of a motion to amend arises when amendment would prevent a party from having a fair trial." *Coffey v State Farm Mut Auto Ins Co*, 183 Mich App 723, 727; 455 NW2d 740 (1990).

In light of plaintiff's acknowledgement and execution of the assignment, plaintiff was aware that she assigned her "right to recover" these no-fault benefits and that Spine Specialists had the discretion to seek collection directly against defendant. Therefore, plaintiff cannot establish prejudice as a result of her assignment of the claim prior to the commencement of trial.

I would reverse the judgment, vacate the recovery of PIP benefits that were assigned to Spine Specialists, and remand for a new trial.

/s/ Kirsten Frank Kelly

-11-